Filed 6/12/15  Paprock v. First Transit CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BERNIE PAPROCK et al., | D064697 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00055583-CU-OE-NC) |
| FIRST TRANSIT, INC., | |
| Defendant and Respondent. | ORDER MODIFYING OPINION AND DENYING PETITIONS FOR REHEARING |
| ERIC P. CLARKE, | |
| Movant and Appellant. | |


THE COURT:

It is ordered that the nonpublished opinion filed herein on May 18, 2015, be modified as follows:

On page 33, footnote 24, insert the following as a first full paragraph:

In a petition for rehearing, Plaintiffs suggest that, because we have concluded on appeal that Clarke is not aggrieved by the Judgment (pt. II. B.2., *ante*), we should direct the trial court on remand to deny

Clarke's motion to vacate. Plaintiffs' position is that a party who is not aggrieved by a judgment lacks standing to vacate the judgment and that on remand the law of the case will be that Clarke is not aggrieved by the Judgment. While we understand Plaintiffs desire to avoid "further needless delay," we decline Plaintiffs' invitation to rule on Clarke's motion to vacate in the first instance.

The one-sentence paragraph beginning "Given the trial court's" becomes a separate last paragraph in footnote 24.

There is no change in the judgment.

The petition for rehearing filed by plaintiffs and respondents Bernie Paprock, Teah Nelson, Pamela Hastings and Mancha Overstreet, and defendant and respondent First Transit, Inc.'s joinder thereto, are denied. Movant and appellant Eric P. Clarke's petition for rehearing is denied.

HUFFMAN, Acting P. J.

Copies to: All parties

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BERNIE PAPROCK et al., | D064697 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00055583-CU-OE-NC) |
| FIRST TRANSIT, INC., | |
| Defendant and Respondent. | |
| ERIC P. CLARKE, | |
| Movant and Appellant. | |


APPEALS from orders and a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed in part, dismissed in part, and reversed and remanded with directions in part.


Law Offices of Mark Yablonovich, Mark Yablonovich, Patrick J. Clifford, Joseph Hoff and Jeffrey Korn for Movant and Appellant.

Huffman & Kostas, James C. Kostas; Law Offices of Sheldon A. Ostroff, Sheldon A. Ostroff; Niddrie, Fish & Addams and Michael H. Fish for Plaintiffs and Respondents.

Littler Mendelson, Theodore R. Scott and David J. Dow for Defendant and Respondent.

These are appeals in a wage and hour class action in which the plaintiff employee class and the defendant employer are both respondents. The appellant is Eric P. Clarke, who appeals from two orders and a judgment of the superior court, following proceedings in which he unsuccessfully tried to intervene, to oppose final approval of the proposed settlement between the class and the employer and to vacate the judgment entered after the trial court gave final approval to the settlement. In each of these proceedings, Clarke was opposed by plaintiffs Bernie Paprock, Teah Nelson, Pamela Hastings and Mancha Overstreet (Plaintiffs) on behalf of themselves and all other similarly situated current and former employees of First Transit, Inc., and defendant First Transit, Inc. (First Transit). We will affirm the order denying intervention, dismiss the appeal from the judgment and reverse the order dismissing Clarke's motion to vacate and remand with instructions that the motion be heard on its merits.[1]

---

[1] Plaintiffs filed a motion to dismiss the appeal before the record was prepared and before Clarke appealed from the order following his motion to vacate the judgment. Clarke opposed the motion. Both sides filed requests for judicial notice in support of their respective positions. Because we now have a complete record and a third appeal, we will resolve all issues in the appeal based on the full briefing. Accordingly, the motion to dismiss and related requests for judicial notice are moot, and we deny them on that basis.

2

I.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A.      *The Class Action Underlying This Appeal* - Paprock *Class Action*

In May 2010, Plaintiffs filed a wage and hour class action complaint against First Transit, asserting three causes of action based on alleged violations of the Labor Code, including failures to provide required meal and rest breaks and to pay wages (*Paprock v. First Transit Inc.* (Super. Ct. San Diego County, 2010, No. 37-2010-55583-CU-OE-NC) (*Paprock* Class Action)).  The complaint alleges that First Transit, a company that provides transportation services, employed Plaintiffs as "non-exempt" bus drivers who transported First Transit's customers.  Plaintiffs alleged that they represented a class of "similarly situated former and current employees of First Transit" who "were employed in California[] and suffered damages as a result of First Transit's unlawful employment practices," as described in greater detail throughout the complaint.

After the completion of the bulk of the class discovery and just weeks before the court-ordered deadline by which Plaintiffs were required to file a class certification motion, in August 2011 Clarke filed an ex parte application for an order shortening time to hear a motion for Clarke to intervene[3] and to have his attorneys appointed as lead

---

2       "As required by the rules of appellate procedure, we state the facts in the light most favorable to the judgment [and appealable orders]."  (*Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 532, fn. 1.)  We will supplement this background as necessary in the Discussion, *post*.

3       "An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming

counsel for the putative class in the *Paprock* Class Action. Plaintiffs and First Transit each filed a substantive opposition to intervention by Clarke. Following the ex parte hearing, the court entered a minute order, ruling in part: "Clarke's motion for leave to intervene is denied. [Clarke's counsel's] request to be appointed Lead Counsel is denied. The current counsel are sufficiently qualified to protect the interests of the putative class, should such a class be certified." Clarke did not appeal.

In September 2011, Plaintiffs filed a motion to certify the class. While the motion was pending, Plaintiffs and First Transit attended an unsuccessful mediation in late November 2011.[4] At a hearing in December 2011, the court granted the class certification motion, and by written order filed in January 2012 certified three plaintiff subclasses of the class of "Paratransit bus drivers employed by First Transit, Inc. in California during the period May 26, 2006[,] to December 16, 2011," who were not provided certain rest breaks, certain meal breaks and certain wages for off-the-clock work as described in greater detail in the order.[5] Over a year later, in February 2013,[6] at a

what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests . . . ." (Code Civ. Proc., § 387, subd. (a); all further undesignated statutory references are to this Code.)

[4] At parts I.B. and I.C., *post*, we discuss other employment litigation that was then pending against First Transit. The parties in those cases, including Clarke, participated in the November 2011 mediation.

[5] The certification order does not describe or define "Paratransit bus drivers." In the briefing, Clarke does not provide any record references for his explanation of the different classes of drivers employed by First Transit; First Transit does not mention

4

second mediation session, Plaintiffs and First Transit settled the action, subject to court approval.[7]

Based on the settlement, Plaintiffs moved for orders preliminarily certifying the proposed settlement class, preliminarily approving the settlement, authorizing the notice of settlement to the class and scheduling a hearing for determination of fairness and final approval of the settlement. The court granted Plaintiffs' motion by order filed April 19. As requested in Plaintiffs' motion (based on the parties' settlement agreement), the proposed settlement class was defined as: "[First Transit's] employees who were employed as Paratransit Drivers and Fixed Route Drivers during the Class Period in California . . . ."[8]

---

paratransit drivers; and Plaintiffs' record reference for the description of paratransit drivers is to argument, which is not evidence (*Villacorta v. Cemex Cement, Inc.* (2013) 221 Cal.App.4th 1425, 1433 (*Villacorta*)).

[6]   All dates are in the year 2013, unless indicated otherwise.

[7]   At the same mediation, First Transit also settled a different class action brought by a different class of employee drivers, which we discuss further at part I.C., *post*.

[8]   The settlement agreement does not define "Paratransit Drivers" or "Fixed Route Drivers," although it provides for determination of a class member's status based in part on "whether the driver performed the duties of a Paratransit or Fixed Route Driver based on the location where the employee was employed." Plaintiffs' points and authorities in support of the preliminary approval explain: "Fixed Route Drivers . . . make specified stops on the same route day after day. Conversely, Paratransit Drivers have an area which they serve and their stops vary day to day based upon customer demand." While potentially helpful to an understanding of the different classes of drivers, argument by counsel is not evidence. (*Villacorta*, *supra*, 221 Cal.App.4th at p. 1433.)

In mid-July — five months *after* the successful mediation, three months *after* the court's preliminary approval of the settlement, over six weeks *after* the settlement administrator mailed 8,114 notices to the members of the settlement class and seven weeks *before* the final fairness hearing — Clarke filed a second ex parte application to intervene. First Transit and Plaintiffs each opposed the application. On July 22, the court denied leave to intervene, ruling that Clarke was not a member of the certified class in the *Paprock* Class Action (Intervention Order). Clarke timely appealed from the Intervention Order.

Plaintiffs then noticed a motion to approve the settlement, the attorney fees and costs, and the incentive awards for Plaintiffs and to enter a final judgment. No class member objected to the proposed settlement; and there was no opposition to the motion — except by Clarke, whom the court had previously ruled was not a class member. The record on appeal contains copies of three sets of oppositions from Clarke, each containing at least a memorandum of points and authorities and a declaration from one of Clarke's attorneys with exhibits: one set was filed July 19, the same date on which Clarke filed his ex parte application to intervene; the second set was filed August 30, two weeks before the hearing on Plaintiffs' motion; and the third set was filed September 11, two days before the hearing on Plaintiffs' motion.[9] Plaintiffs filed a written request,

---

[9] The file stamps on the July 19 documents have been cancelled. In the July 19 documents, Clarke refers to himself as a "Class Member," whereas in the August 30 and September 11 documents, Clarke refers to himself as an "Interested Party" — arguably recognizing the court's July 22 ruling that he was not a member of the class in the *Paprock* Class Action.

accompanied by briefing and evidence, to strike Clarke's opposition to their pending motion. The reporter's transcript of the hearing refers to Clarke's written response to Plaintiffs' request to strike, but the parties have not provided us with a copy, and the register of actions does not reflect such a filing. At the hearing on Plaintiffs' motion for approval of the settlement and entry of a final judgment, the court granted Plaintiffs' request to strike Clarke's opposition to the motion.[10] In essence, the court ruled that it had previously determined that Clarke was not a member of the class in the *Paprock* Class Action, and Clarke's recent submissions did not qualify as a motion for reconsideration.

At the same hearing, the court granted Plaintiffs' substantive motion. By separate written order filed September 13, the court approved the parties' written settlement agreement, class counsel and the claims administrator; redefined the settlement class consistent with the terms of the agreement; authorized payment of attorney fees, costs, incentive awards and claims administration compensation; and entered a final judgment

---

Curiously, the register of actions does not reflect *any* filings by Clarke on or around July 19 or August 30, and *only* counsel's declaration on or around September 11. Because of our disposition of Clarke's appeal from the Judgment in part II.B., *post*, this discrepancy is irrelevant.

[10] The court filed two orders — one striking the set of documents Clarke filed August 30 and one striking the set of documents Clarke filed September 11.

7

under which the court retained jurisdiction for purposes of effectuating the settlement (Judgment).[11]  Clarke timely appealed from the Judgment.

Within weeks of initiation of the appeal from the Intervention Order and the filing of the Judgment, Clarke filed a motion to vacate and set aside the Judgment on the grounds:  (1)  the Judgment was "the product of incorrect or erroneous legal basis not consistent with or supported by the facts" (§ 663);[12] and (2) extrinsic fraud with regard to the determination that Clarke is not a class member.  Plaintiffs and First Transit each filed opposition to Clarke's motion.  More than 60 days after notice of entry of the Judgment (while the motion was pending, but before the date for hearing), Plaintiffs filed an ex parte application to "dismiss" Clarke's motion on the basis the court lacked jurisdiction to hear the motion.  At the hearing, the court granted the application and "dismissed forthwith" Clarke's motion and vacated its hearing date (Dismissal Order).  Clarke timely appealed from the Dismissal Order.

Before we discuss the issues raised by Clarke in his appeals from the Intervention Order, the Judgment and the Dismissal Order, we will provide additional background

---

11     The Judgment effected the settlement, which required First Transit to pay up to $11.5 million — with up to approximately $6.89 million potentially going to the employee class members.

12     "A judgment or decree, when based upon a decision by the court, . . . may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment:  [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts . . . ."  (§ 663.)

8

from other employment litigation against First Transit that is necessary to an understanding of the arguments raised by the parties.

B.      *Clarke's Los Angeles Representative Action* — Clarke *PAGA Action*

The Labor Code Private Attorneys General Act of 2004 (PAGA), Labor Code section 2698 et seq., authorizes "an aggrieved employee" to bring an action and recover civil penalties "on behalf of himself or herself and other current or former employees" (*id.*, § 2699, subd. (a)), thereby "allow[ing] a plaintiff employee to collect penalties not only for himself, but also for other current and former employees" (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 499).  The representative action authorized by the PAGA is an enforcement action "designed to protect the public and penalize the employer for past illegal conduct.  Restitution is not the primary object of a PAGA action, as it is in most class actions."  (*Franco v. Athens Disposal Co., Inc*. (2009) 171 Cal.App.4th 1277, 1300.)

In January 2008, Clarke filed an action in Los Angeles Superior Court against First Transit and others (*Clark v. First Transit, Inc*. (Super. Ct. L.A. County, 2008, No. BC384583) (*Clarke* PAGA Action)), alleging claims for civil penalties pursuant to the PAGA.  The *Clarke* PAGA Action seeks civil penalties on behalf of a defined group of employee drivers against the defendants based on alleged Labor Code violations dealing with meal breaks, rest breaks, overtime, wage statements and payment of wages on termination.

The *Clarke* PAGA Action was stayed in February 2009 and remained stayed at least through September.[13]

C.     *The Los Angeles Class Action —* Alonzo *Class Action*

In March 2010, Angel Alonzo filed a class action complaint in Los Angeles Superior Court against First Transit (*Alonzo v. First Transit, Inc*. (Super. Ct. L.A. County, 2010, No. BC433932) (*Alonzo* Class Action)), alleging many of the same violations of the Labor Code asserted by Plaintiffs in the *Paprock* Class Action, including failures to provide required meal and rest breaks and to pay wages.  Class counsel in the *Alonzo* Class Action described the plaintiff class as First Transit employees who worked as "Community DASH Package 2 and/or 6 bus drivers who claimed that they were not provided legally required meal and rest breaks."  The order certifying the class described it as:

> "All bus operators that worked for First Transit, driving bus routes associated with Community DASH Packages 2 and/or 6 in Los Angeles County, at any time during the Class Period in unit(s) represented for purposes of collective bargaining by Teamsters Local Union 572."

Without a record reference, Clarke advises that "DASH is an acronym for 'Downtown Area Short Hop' bus routes, some of which were operated during the relevant time period by First Transit under contracts with the City of Los Angeles Department of Transportation."

---

13     In his opening brief, Clarke tells us that the *Clarke* PAGA Action is stayed pending resolution of the *Paprock* Class Action and another case, but the record reference for this statement mentions only that the action was stayed as of the date of the declaration (Oct. 1) and does not state the reason for the stay.

10

Clarke was a member of the certified class in the *Alonzo* Class Action based on his employment by First Transit as a bus driver in Los Angeles during the relevant time period at a "location . . . associated with DASH Package 6." Clarke opted out of the class in the *Alonzo* Class Action. According to his attorney, Clarke opted out "to preserve his rights to seek PAGA penalties and for his own individual claims."

At the February mediation at which the *Paprock* Class Action was settled (see pt. I.A., *ante*), the parties also settled the *Alonzo* Class Action, subject to court approval.[14]

II.

DISCUSSION

A. *First Appeal (Intervention Order): The Trial Court Did Not Err in Denying Clarke Leave to Intervene*

1. *Additional Facts*

Once again, Clarke filed his second ex parte application to intervene on July 19 — three months after the court had provisionally approved the settlement in the *Paprock* Class Action and less than two months before the scheduled hearing on the final approval and judgment. He sought intervention "in order to address numerous, fatal flaws in the proposed settlement," including what Clarke described as: (1) the improper settlement of PAGA claims; (2) an inter-class conflict between the paratransit drivers and fixed route drivers; (3) a conflict of interest between the originally certified class and the pending

---

14 The settlement agreement in the *Alonzo* Class Action required First Transit to pay up to $2 million, depending on certain contingencies.

11

redefined settlement class; (4) an inadequate class representative for the fixed route drivers; (5) a conflict of interest by, and thus the inadequacy of, class counsel; and (6) the collusion between class counsel and First Transit. Clarke included a memorandum of points and authorities, a declaration from counsel and more than 100 pages of exhibits.

Clarke's proposed complaint in intervention closely tracked Plaintiffs' complaint and its three causes of action — with the addition of "intervention allegations" by which Clarke set forth the bases of his objections to the proposed settlement of the *Paprock* Class Action. (Capitalization omitted.) In part Clarke alleged that he did not receive notice of the proposed settlement, even though he "*is a member of the proposed class in this matter*[] and his rights and interests are affected by the proposed settlement preliminarily approved by the Court in this action." (Italics added.) Clarke's objections focused principally on that part of the proposed settlement in the *Paprock* Class Action by which $10,000 was allocated to PAGA penalties. In support of his application to intervene, Clarke argued that based on the pendency of the *Clarke* PAGA Action and the proposed settlement of the PAGA violations in the *Paprock* Class Action, he had "a direct immediate and substantial interest in the [*Paprock* Class Action] lawsuit." (Capitalization omitted.) In his proposed complaint in intervention, Clarke alleged:

> "On information and belief, [Clarke] has a superior right to recover civil penalties on behalf of the State of California for [First Transit's] Labor Code violations alleged in the [*Clarke*] PAGA Action and herein, that Plaintiffs' counsel was not authorized to seek or settle these civil penalties, and that the release of claims that will be granted pursuant to the proposed settlement will deprive [Clarke] of his right to pursue his claim to recover these civil penalties on behalf of the State."

12

In opposition, Plaintiffs and First Transit together submitted two sets of points and authorities, six declarations, 35 exhibits and a request for judicial notice of another eight exhibits. Plaintiffs and First Transit argued in principal part: (1) because Clarke was not a member of the class, he had no interest in the *Paprock* Class Action; (2) Clarke's application was untimely; (3) the applicable statute of limitations barred any potential PAGA claim Clarke might assert; and (4) Clarke was not an "aggrieved employee" as required by the PAGA to assert a representative claim.

At the hearing on Clarke's application, the court first ruled: "I'm going to deny the request. I think there's a record that [Clarke] is not a member of this class . . . ." The court later commented that but for the settlement the case already would have been tried, stating: "And so I think coming in at this point . . . precludes the motion that [Clarke is] bringing today." The July 22 written minute order provides in full: "Ex Parte application of Mr. Clarke for leave to intervene is DENIED. [¶] The Court finds that Mr. Clarke is not a part of this case."

2. *Law*

Section 387 allows for either mandatory intervention (*id.*, subd. (b)) or permissive intervention (*id.*, subd. (a)), as follows:

> "(a) Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. . . .
>
> "(b) If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is

13

adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene."

   a.  *Mandatory Intervention (§ 387, subd. (b))*

Under mandatory intervention, "[a] prospective intervener must demonstrate both adequate interest in the litigation's outcome and inadequate representation of its interest by either party. [Citation.] If the court determines the [prospective intervener] satisfies both requirements, it *must permit* intervention." (*Estate of Davis* (1990) 219 Cal.App.3d 663, 667 (*Davis*), fn. omitted, italics added.)

We agree with Plaintiffs that the appropriate standard of review for the denial of mandatory intervention is subject to dispute. (See *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1425 (*Siena Court*) [several appellate courts have implicitly applied the de novo standard of review, but at least one appellate court has applied the abuse of discretion standard].) Clarke argues for de novo review on the basis that the resolution of the issue requires our determination whether Clarke is a member of the class in the *Paprock* Class Action, which necessarily requires the interpretation of the definition of a class member in the order granting preliminary certification of the class. We agree with Clarke that the interpretation of an unambiguous court order, like any other writing, is de novo.[15] (See *Hirschfield v. Schwartz* (2001) 91 Cal.App.4th 749, 766 [meaning and effect of underlying order determined according to

---

[15] No party contended that the order preliminarily certifying the class is ambiguous, and accordingly no party offered extrinsic evidence in an effort to prove any particular meaning to any part of the order. (See *Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [extrinsic evidence may be offered to establish an ambiguity in a writing].)

14

the rules governing the interpretation of writings generally]; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [interpretation of written contract reviewed de novo where there is no conflicting extrinsic evidence].)

Here, however, our review does not require us to interpret the language of the order certifying the class. Rather, we are called on to determine whether, *given the language of the order and the evidence of Clarke's employment with First Transit*, the trial court erred in ruling Clarke was not a member of the class. "The applicable standard of review is determined by the nature of the challenged action of the trial court, not by what counsel argues about that action." (*El Dorado Meat Co. v. Yosemite Meat & Locker Service, Inc.* (2007) 150 Cal.App.4th 612, 617.) Since the finding that Clarke is not a member of the class is based on the application of a writing to disputed evidence, we will review the finding for substantial evidence. (*Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.* (2012) 204 Cal.App.4th 1214, 1222.)

In reviewing the trial court's factual findings for substantial evidence, we begin with the presumption that the record contains evidence to uphold every finding of fact, and the appellant has the burden to demonstrate there is no substantial evidence to support the findings under attack. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).) " 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Ibid*.) We "may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to

15

[the respondent] must be accepted as true and conflicting evidence must be disregarded[,] . . . 'indulging every legitimate inference which may be drawn from the evidence in [the respondent's] favor.' " (*Campbell v. General Motors Corp*. (1982) 32 Cal.3d 112, 118.) The issue is not whether there is evidence in the record to support a different finding, but whether there is evidence that, if believed, would support the findings actually made. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 872-873.)

    b.  *Permissive Intervention (§ 387, subd. (a))*

  Under permissive intervention, "[t]he trial court has discretion to permit a nonparty to intervene where (1) the proper procedures have been followed, (2) the nonparty has a direct and immediate interest in the action, (3) the intervention will not enlarge the issues in the litigation, and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Chavez v. Netflix, Inc*. (2008) 162 Cal.App.4th 43, 51 (*Chavez*).)

  The parties agree, and we concur, that the denial of permissive intervention is reviewed on appeal for an abuse of discretion. (*Siena Court*, *supra*, 164 Cal.App.4th at p. 1428.) A trial court abuses its discretion only if, based on the applicable law and considering all of the relevant circumstances, the decision " 'exceeds the bounds of reason.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) As particularly applicable here, given the evidence before the trial court, we must affirm so long as the record contains "sufficient evidence for us to conclude that the action of the trial court was within the permissible range of options set by the legal criteria." (*Dorman v. DWLC Corp*. (1995) 35 Cal.App.4th 1808, 1815.)

16

3.    *Analysis*

On appeal, Clarke argues the court erred on the basis that he met the requirements for both mandatory and permissive intervention under section 387.  We disagree.

As a preliminary issue, Plaintiffs rely on *Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115, and argue that, by failing to challenge the court's oral finding that he did not timely seek intervention, Clarke forfeited appellate review of the Intervention Order.  Under either mandatory or permissive intervention, the application must be brought "timely."  (§ 387, subds. (b), (a).)  According to Plaintiffs, the court found that Clarke did not timely file his application, yet Clarke failed to discuss timeliness in his opening brief.  We agree in concept with Plaintiffs' legal argument under *Doe*, but the record on appeal does not fully support one of the predicates for forfeiture — namely, a finding by the trial court that Clarke failed to timely file his application. Although the court *orally* found at the hearing that Clarke's application was untimely, the *written* order does not mention timeliness.  The Intervention Order contains only a finding that Clarke was not a member of the class.  Because a trial court may properly issue a written order that differs from its oral ruling (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1170), we decline to base our review exclusively on the court's oral statements — especially where, as here, the court's written finding fully supports the denial of Clarke's application.

a.    *Mandatory Intervention (§ 387, subd. (b))*

As introduced *ante*, under mandatory intervention, a prospective intervener must establish in part an "adequate interest in the litigation's outcome" (*Davis*, *supra*, 219

17

Cal.App.3d at p. 667); and under permissive intervention, a prospective intervener must establish in part a "direct and immediate interest in the action" (*Chavez*, *supra*, 162 Cal.App.4th at p. 51). Under either mandatory or permissive intervention, therefore, if Clarke is not a member of the class, then he has neither an "adequate" nor a "direct and immediate" interest in the outcome of the action and the court did not err in denying intervention.

The order provisionally certifying the class — i.e., the order defining the class at the time the Intervention Order was entered — describes the class as "[First Transit's] employees who were employed as Paratransit Drivers and Fixed Route Drivers during the Class Period in California." Clarke contends that he is a member of the class, because (1) Clarke was a DASH driver during the relevant time period, (2) DASH drivers are fixed route drivers, and (3) the class includes fixed route drivers. In part, Clarke argues:

> "Clarke is a class member because he was a fixed route driver. . . . [¶] . . .
> There is no disagreement that Clarke was a DASH route driver or that
> drivers of DASH routes fall within the definition of fixed route drivers,
> although [Plaintiffs and First Transit] attempt to perpetuate a superficial
> distinction between DASH route drivers like Clarke and other fixed route
> drivers, contrary to their prior representations. . . . [¶] . . . Thus, DASH
> route drivers are a type of fixed route driver. Since the *Paprock* settlement
> class includes both fixed route and paratransit drivers, Clarke falls squarely
> within the definition of a *Paprock* class member. Because the record is
> completely bereft of any legal authority indicating he is not a class member,
> the lower court's ruling is inherently improper and appealable."

The problem with Clarke's full presentation in his opening brief is that it contains no record references to any *evidence* in support of the statements quoted immediately

18

above.[16] Clarke's suggestion that "the record is completely bereft of any legal authority indicating he is not a class member" misunderstands the process — both in the trial court and on appeal. In the trial court, neither the court nor Plaintiffs nor First Transit was responsible for providing *legal authority* that Clarke *is not* a class member. As the moving party, the burden was on Clarke to present *evidence* that he *is* a class member. (Evid. Code, § 500 ["a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief . . . that he is asserting"].) On appeal, because "[a]n appellate court ' "must *presume* that the record contains evidence to support every finding of fact[,]" ' " Clarke, as the appellant, has the "burden . . . to identify and establish deficiencies in the evidence." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.) Accordingly, where (as here) the appeal requires a determination of the sufficiency of the evidence to support a certain finding, Clarke, as the appellant, is " 'required to set forth in [his] brief *all the material evidence on the point* . . . . Unless this is done the error is deemed to be waived.' " (*Foreman*, *supra*, 3 Cal.3d at p. 881, some italics added.) Here, because Clarke has presented *no* evidence regarding his

---

16     Although not cited to us by Clarke, the only evidence he submitted in support of his ex parte application for leave to intervene was a declaration of counsel — the bulk of which merely authenticated exhibits. With regard to Clarke's potential status as a class member in the *Paprock* Class Action, counsel testified only that "Clarke worked as a bus driver for First Transit from approximately February 2000 to February 2007. During this time, he was a non-exempt employee who was affected by [First Transit's] violations of the California Labor Code."

19

purported status as a *Paprock* Class Action class member[17] — either in support of or against the court's finding — Clarke has forfeited appellate review of the finding that he is not a class member. (*Foreman*, at p. 881.)

In any event, we are satisfied that the record contains substantial *evidence* that Clarke is not a member of the class in the *Paprock* Class Action: Clarke worked exclusively as a DASH route driver at locations in Los Angeles County known as "location #55512 and/or #5512" — locations specifically associated with the "DASH Package 6"; the certified class in the *Alonzo* Class Action included First Transit drivers with "routes associated with Community DASH Packages 2 and/or 6 in Los Angeles County"; Clarke was a member of the class in the *Alonzo* Class Action; and the drivers who worked at the Los Angeles County locations covered by the settlement in the *Alonzo* Class Action are excluded from the settlement class in the *Paprock* Class Action.

---

17    In his brief, Clarke does cite to allegations in various complaints and arguments in memoranda of points and authorities from the *Paprock* Class Action, the *Clarke* PAGA Action and the *Alonzo* Class Action. However, "the unsworn statements of counsel are not evidence" (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11), and unsupported allegations and arguments in the trial court do not become evidence merely by repeating them on appeal.

Clarke also cites to declarations in other actions for which he asked the trial court here to take judicial notice. However, those declarations are not evidence for at least two reasons: (1) there is no indication whether the trial court took judicial notice of them; and (2) more fundamentally, while taking judicial notice might properly be taken of *the existence* of the declarations, it cannot be taken of *the facts asserted* in the declarations (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1057).

Finally, Clarke's factual assertions that begin with the clause "There is no disagreement" are not evidence either. To the contrary, without a record reference, such an introduction suggests there may well be a disagreement. Moreover, the burden is on Clarke to cite to evidence (*Foreman*, *supra*, 3 Cal.3d at p. 881), not on Plaintiffs or First Transit to deny an unsupported recitation of supposed facts.

20

In affirming the finding that Clarke is not a member of the class in the *Paprock Class Action*, we are necessarily affirming the ruling the court did not err in denying mandatory intervention — regardless whether such ruling is reviewed de novo or for an abuse of discretion. (See *Siena Court, supra,* 164 Cal.App.4th at p. 1425.)

b. *Permissive Intervention (§ 387, subd. (a))*

Finally, Clarke argues that even if he is not a class member, the court erred in denying permissive intervention (§ 387, subd. (a)), because he has an interest in the *Paprock* Class Action. According to Clarke, since the settlement of the *Paprock* Class Action included payment for, and a release of, the class's potential PAGA claims, Clarke's claim for PAGA penalties in the *Clarke* PAGA Action will be adversely affected, if not extinguished altogether. We disagree. Clarke is not a member of the class in the *Paprock* Class Action; thus, the settlement and releases in the *Paprock* Class Action will not affect his claims in the *Clarke* PAGA Action. Only an " 'aggrieved party' " — namely, an employee "against whom one or more of the alleged [Labor Code] violations was committed" (Lab. Code, § 2699, subd. (c)) — may recover a PAGA penalty (*id.*, subd. (g)(1)).[18] Because Clarke is not a member of the class in the *Paprock* Class Action, the Labor Code violations at issue in the *Paprock* Class Action were not committed "against" him. For this reason, he is not a statutorily "aggrieved employee"

---

[18] In his proposed complaint in intervention, Clarke acknowledges this statutory requirement and affirmatively alleges that he was employed by First Transit "and the alleged violations were committed against him."

21

for PAGA purposes, thereby precluding him from asserting a PAGA claim based on these alleged Labor Code violations.

Only the aggrieved employees of First Transit *who were represented in the* Paprock *Class Action* are bound by the settlement and related Judgment.  (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 591-592 (*Villacres*) [preclusive effect of class action judgment bars later claims from *class members only*]; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 468, pp. 1131-1132 [a person who is neither a party nor in privity with a party is not bound by a judgment in an action, even if the person is interested in and directly affected by the outcome of the action].)[19]  Therefore, the Judgment will have no preclusive effect on the claims in the *Clarke* PAGA Action. Formally acknowledging this result, First Transit (through its counsel in a sworn declaration) concedes, "the releases provided by [Plaintiffs in] the *Paprock* settlement agreement approved by th[e] Court *will not apply to Clarke*."  (Italics added.)

Accordingly, the court did not abuse its discretion in denying permissive intervention.

_____

[19]     Clarke's reliance on *Arias v. Superior Court* (2009) 46 Cal.4th 969 (*Arias*) to the contrary is misplaced.  In *Arias*, a PAGA representative action, the court explained that the preclusive effect of the judgment applied to all of the employer's aggrieved employees, because they were all represented in the PAGA action.  (*Id.* at p. 985.)  To the extent *Arias* speaks to the preclusive effect of a *class action* judgment, dictum in the opinion supports our conclusion:  "[T]he preclusive effect of judgments depends not on whether the action is brought on behalf of the general public, but on whether those sought to be bound by a judgment are named parties, are in privity with named parties, *or are members of a class certified under class action procedures*."  (*Id*. at p. 984, fn. 6, italics added.)  In the *Paprock* Class Action, Clarke is neither a named party, in privity with a named party nor a member of the certified class.

B.     *Second Appeal (Judgment):  Because Clarke Lacks Standing, His Appeal from the Judgment Must Be Dismissed*

Plaintiffs and First Transit both argue that, because Clarke was denied the right to intervene on the basis he is not a member of the class in the *Paprock* Class Action, he lacks standing to appeal from the Judgment.  We agree.

The right to appeal is statutory.  (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5; *Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67.)  In a case like the present one, "[a]ny party aggrieved may appeal . . . ."  (§ 902.) " 'The test is twofold — one must be *both a party of record to the action and aggrieved* to have standing to appeal.' "  (*Gregory D.*, at p. 67.)  This rule is jurisdictional.  (*Ibid.*)

As we explain, Clarke is neither a party nor aggrieved.

1.     *Clarke Is Not a Party*

Clarke argues that, because he is a member of the class, he has standing to appeal.

Generally, "only parties of record may appeal" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736 (*Carleson*)), and unnamed class members lack standing to appeal (*Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199, 201).  Clarke relies on *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, 395-396, for the following exception to the general rule:  "A class member who appears at a fairness hearing and objects to a settlement affecting that class member has standing to appeal an adverse decision notwithstanding the fact that the member did not formally intervene in the action."  (*Id.* at p. 395.)

23

For at least two reasons, this authority does not help Clarke. First, he did not appear at the fairness hearing and object to the settlement. The court denied Clarke's application to intervene for this purpose and struck the pleadings in support of his objections.[20] Additionally, Clarke is not a member of the class in the *Paprock* Class Action, as we explained at part II.A.3.a., *ante*.

For these reasons, Clarke is not a party of record to the *Paprock* Class Action.

## 2. *Clarke Is Not Aggrieved*

Clarke argues that he is aggrieved by the Judgment, because he has an immediate, pecuniary and substantial interest in the case. More specifically, he argues that because the Judgment in the *Paprock* Class Action will bar the claims in his *Clarke* PAGA Action on the basis of res judicata, he has standing to appeal from the Judgment.

However, Clarke's premise for his position is faulty. As we explained at part II.A.3.a., *ante*, because Clarke is not a class member in the *Paprock* Class Action, the Judgment will not bar or extinguish the claims in the *Clarke* PAGA Action. (*Villacres*, *supra*, 189 Cal.App.4th at pp. 591-592; see *Arias*, *supra*, 46 Cal.4th at p. 984, fn. 6.)

---

[20] The denial of intervention did not leave Clarke without recourse. Initially, where leave to intervene is denied, an appeal lies from the order of denial. (*Carleson*, *supra*, 5 Cal.3d at p. 736.) Further, where (as here) the final judgment is rendered before disposition of the appeal from the denial of intervention, the nonparty can still obtain review of the judgment — and appellate standing in the event of an adverse determination — by filing a motion to vacate the judgment in the trial court. (*Ibid.*; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 26, p. 89.) Clarke has pursued *both* remedies here. (See pt. I.A., *ante*; pt. I.C., *post*.)

24

Accordingly, because Clarke is not aggrieved by the Judgment, his appeal from the Judgment is dismissed.

C.   *Third Appeal (Dismissal Order) — The Trial Court Erred in Dismissing Clarke's Motion to Vacate the Judgment*

1.   *Additional Facts*

The Judgment was filed on September 13, Plaintiffs gave notice of its filing on September 16[21] and Clarke timely filed a motion to vacate the Judgment 15 days later on October 1.  Clarke noticed the hearing on his motion for December 13 — 88 days later.  Clarke based his motion on two grounds:  (1) the Judgment was "the product of incorrect or erroneous legal basis not consistent with or supported by the facts" under section 663; and (2) the determination that Clarke was not a class member was the result of extrinsic fraud.

While the motion was pending, Clarke noticed his appeal from the Judgment on November 13.

In response to Clarke's motion to vacate the Judgment (noticed for hearing on Dec. 13) Plaintiffs filed written opposition on or around November 19, and First Transit filed written opposition on or around December 3.

By pleadings dated December 5 — 80 days after Clarke filed his motion to vacate the Judgment — Plaintiffs prepared an ex parte application (with points and authorities and a declaration) to "dismiss" Clarke's motion for lack of jurisdiction on two

---

21   At a later hearing, Plaintiffs' counsel stated that he did not serve Clarke with the notice, "because he wasn't a party."  The copy of the notice in the record does not have a proof of service attached.

independent grounds:  (1) section 663a sets a 60-day limit on the trial court's power to vacate a judgment and more than 60 days had passed since Clarke filed the motion;[22] and (2) Clarke's appeal from the Judgment had divested the court of jurisdiction.  Clarke filed points and authorities and a declaration with exhibits in opposition.  Clarke acknowledged that his pending appeal from the Judgment had divested the court of jurisdiction, but argued that under section 916 the filing of the appeal had stayed the hearing on the motion to vacate the Judgment until disposition of the appeal.

The court entertained oral argument on December 9, taking the matter under submission to review again what the parties had filed in light of counsel's comments at the hearing.  Filing a written order later on December 9, the court granted Plaintiffs' ex parte application and "dismissed forthwith" Clarke's motion to vacate the Judgment.  The court ruled that it lacked jurisdiction on both grounds pleaded:  (1) Clarke did not obtain a ruling on his motion within 60 days of the filing of his motion; and (2) Clarke's appeal from the Judgment divested the court of jurisdiction to vacate the Judgment.

2.  *Law*

a.  *Statutory Motion to Vacate the Judgment Under Section 663*

A section 663 motion to vacate may be used to set aside a judgment based on a court's decision, where the moving party is able to demonstrate an "[i]ncorrect or

---

[22]    "[T]he power of the court to rule on a motion to set aside and vacate a judgment shall expire . . . 60 days after filing of the first notice of intention to move to set aside and vacate the judgment.  If that motion is not determined within the 60-day period, or within that period, as extended, the effect shall be a denial of the motion without further order of the court."  (§ 663a, subd. (b).)

erroneous legal basis for the decision, not consistent with or not supported by the facts . . . ."  (§ 663, subd. (1).)  A section 663 motion must be decided within 60 days of its filing, or "the effect shall be a denial of the motion without further order of the court." (§ 663a, subd. (b).)

> b. *Equitable Motion to Vacate Judgment Based on Extrinsic Fraud*

Even where relief is no longer available under statutory provisions, a trial court generally retains the inherent power to vacate a judgment on equitable grounds where the adversely affected party establishes that the judgment resulted from extrinsic fraud. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228-1229; see *Villarruel v. Arreola* (1977) 66 Cal.App.3d 309, 317 [" 'A person, not a party to the action in which the extrinsic fraud is perpetrated, who is adversely affected by the judgment, may bring' " "a motion [to vacate the judgment] in the action in which the judgment was entered"].)  We review the court's denial of a motion for equitable relief to vacate a judgment for an abuse of discretion, "determining whether that decision exceeded the bounds of reason in light of the circumstances before the court."  (*Gorham*, at p. 1230.)

"A motion to vacate a judgment for extrinsic fraud is not governed by any statutory time limit, but rather is addressed to the court's ' " 'inherent equity power' " ' to grant relief from a judgment procured by extrinsic fraud."  (*Department of Industrial Relations v. Davis Moreno Construction, Inc.* (2011) 193 Cal.App.4th 560, 570.)

Extrinsic fraud " 'is a broad concept that "tend[s] to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." '  [Citations.]

27

The clearest examples of extrinsic fraud are cases in which the aggrieved party is kept in ignorance of the proceeding or is in some other way induced not to appear. [Citation.] In both situations the party is 'fraudulently prevented from presenting his claim or defense.' " (*Estate of Sanders* (1985) 40 Cal.3d 607, 614; see *City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067 ["The essence of extrinsic fraud is one party's preventing the other from having his day in court."].)

### c. *Automatic Stay Under Section 916*

As a general rule, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (§ 916, subd. (a).) "The purpose of the automatic stay provision of section 916, subdivision (a) 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The [automatic stay] prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189 (*Varian*).)

For purposes of the section 916, subdivision (a) stay, in determining whether a postjudgment trial court proceeding is "embraced" in or "affected" by the appeal (*ibid.*), if the postjudgment proceeding " 'would have any effect on the "effectiveness" of the appeal[,]' " then the proceeding is stayed, and if not, then it may continue. (*Varian*, *supra*, 35 Cal.4th at p. 189.) That is because jurisdiction over the appealed matter shifts

28

to the appellate court and is terminated in the trial court — including the trial court's power to vacate the judgment on appeal. (*Id.* at pp. 189-190.) Under such circumstances, the trial court's power to vacate a judgment on appeal " '*is suspended while the appeal is pending*.' " (*Id.* at pp. 189-190, italics added.) More than a century ago, our Supreme Court explained the effect of this suspension of jurisdiction: "By the appeal, the jurisdiction of the lower court in regard to all matters relating to the correctness or validity of the judgment or order appealed from is suspended, *with the result that the lower court is without power to take any action in regard thereto during the pendency of the appeal*." (*Parkside Realty Co. v. MacDonald* (1914) 167 Cal. 342, 347 (*Parkside Realty*), italics added.)

### 3. *Analysis*

#### a. *Clarke Has Standing to Appeal*

There is no question but that Clarke has "party" status for purposes of standing to appeal from that part of the Dismissal Order denying his section 663 motion to vacate. Whereas "one who is denied the right to intervene in an action ordinarily may not appeal from a judgment subsequently entered in the case[,] . . . one who is legally 'aggrieved' by a judgment may become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to . . . section 663." (*Carleson*, *supra*, 5 Cal.3d at p. 736, citation and fn. omitted.)

However, the language in *Carleson* is very specific: the aggrieved nonparty may move to vacate the judgment "*pursuant to . . . section 663*." (*Carleson*, *supra*, 5 Cal.3d at

29

p. 730, italics added.) Here, Clarke also seeks appellate review of that part of the Dismissal Order denying his nonstatutory motion to vacate based on extrinsic fraud.

*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1 interprets *Carleson* "as merely identifying one type of motion to vacate that will confer 'party' status on the movant for purposes of appellate standing" and allowed an aggrieved nonparty to have "party" status to appeal from the denial of a motion to vacate the trial court's decision and order a new trial under section 657. (*Id.* at p. 14 [recognizing "the general rule that doubts as to standing are resolved in favor of the right to appeal"]; see also *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1342-1343 [aggrieved nonparty had standing to appeal under §§ 629 (judgment notwithstanding the verdict) and 657 (new trial)].) Although we have not found authority granting "party" status to an aggrieved nonparty following a nonstatutory motion to vacate, we agree with those courts that apply an expansive application of standing and see no reason to treat an appellant's standing from a statutory motion to vacate differently from a nonstatutory motion to vacate.

      b.    *Clarke's Appeal from the Judgment "Suspended" the Trial Court's Jurisdiction to Hear the Motion to Vacate*

We agree with the parties that, once Clarke noticed his appeal from the Judgment, the trial court no longer had jurisdiction to hear the motion to vacate. In *Varian*, the Supreme Court expressly identified a motion to vacate the judgment as one type of trial court proceeding that is "embraced" in or "affected" by an appeal from the judgment such that the trial court is divested of jurisdiction to rule on the motion. (*Varian*, *supra*, 35 Cal.4th at pp. 189-190; see *Copley v. Copley* (1981) 126 Cal.App.3d 248, 298 (*Copley*)

30

["During the pendency of an appeal, the trial court is without power to hear a motion to vacate judgment from which an appeal has been taken . . . ."]; *Beresh v. Sovereign Life Ins. Co.* (1979) 92 Cal.App.3d 547, 552 (*Beresh*) [" 'the appeal removed from the jurisdiction of the superior court the subject matter of the judgment' "].)  The issue then becomes what to do with Clarke's motion once the appeal from the Judgment divested the court of jurisdiction to rule on the motion.

Plaintiffs contend that the lack of jurisdiction required the trial court to dismiss the motion, whereas Clarke contends that the automatic stay (§ 916, subd. (a)) required the trial court to suspend the motion until jurisdiction reinvested in the trial court.  We agree with Clarke.

Plaintiffs cite *Copley* and *Beresh* for the proposition that "when the court lacks jurisdiction to rule on a [section] 663 motion, the motion must be denied or dismissed, not 'stayed.' "[23]  As quoted *ante*, in both *Copley* and *Beresh*, the trial court lacked jurisdiction to hear a motion to vacate a judgment while the judgment was on appeal. (*Copley*, *supra*, 126 Cal.App.3d at p. 298; *Beresh*, *supra*, 92 Cal.App.3d at p. 552.) Based on the lack of jurisdiction, the *Copley* court said, "the court here had authority only to *deny the motion*" (*Copley*, at p. 298, italics added) and the *Beresh* court said that the trial court "*correctly denied*" the motion to vacate (*Beresh*, at p. 552, italics added). However, in each of these opinions, the court only discussed and cited authority for the

---

[23]    In *Beresh*, the motion to vacate was brought under section 473, not section 663. (*Beresh*, *supra*, 92 Cal.App.3d at pp. 550, 552.)  This does not affect our analysis.

proposition that the trial court lacked jurisdiction to hear the motion to vacate; neither discussed or cited authority for *the proper remedy* when a trial court lacks jurisdiction to hear a pending motion to vacate.

In contrast, we have consistent Supreme Court authority from at least 1914 through at least 2005 which tells us that, during the pendency of an appeal from a judgment, the superior court is "without power to take *any* action" in regard to the motion to vacate the judgment (*Parkside Realty*, *supra*, 167 Cal. at p. 347, italics added), because *all power* " '*is suspended* while the appeal is pending' " (*Varian*, *supra*, 35 Cal.4th at pp. 189-190, italics added).  To the extent the Courts of Appeal opinions in *Copley* and *Beresh* are inconsistent with the Supreme Court opinions in *Parkside Realty* and *Varian* (and the 90 years of consistent authority in between), we must follow the Supreme Court precedent.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

*Varian* goes on to explain that where a trial court is without jurisdiction, it "has no power 'to hear or determine [the] case' " and any order rendered by a court lacking jurisdiction is " '*void on its face*.' "  (*Varian*, *supra*, 35 Cal.4th at pp. 196, 200, italics added.)  More specifically, if the superior court is without jurisdiction to issue an order because the matter under consideration is "embraced" in or "affected" by a pending appeal — e.g., an order dismissing a motion to vacate a judgment while an appeal from the judgment is pending — any such order is *void*:

> "In order to preserve the status quo and return the parties to 'the same condition they were before the order was made' [citation], *section 916 necessarily renders any subsequent trial court proceedings on matters 'embraced' in or 'affected' by the appeal void . . . .*"

32

(*Id.* at p. 198, italics added.) Accordingly, the Dismissal Order here is void.

In dismissing Clarke's motion to vacate the Judgment at a time when the court was divested of jurisdiction over the Judgment (and matters embraced in or affected by the pending appeal) and the motion was suspended, the trial court performed a judicial act in excess of its jurisdiction. While we agree with Plaintiffs that a court always has the jurisdiction to determine whether it has jurisdiction (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267), once the court here determined that it did not have jurisdiction to rule on Clarke's motion to vacate the Judgment, the court erred in dismissing the motion.

The Dismissal Order is reversed, and the matter is remanded to the superior court with instructions to address forthwith the issues raised in Clarke's motion to vacate the Judgment and Plaintiffs' and First Transit's oppositions to the motion.[24]

---

[24] Given the trial court's ruling that Clarke is not a member of the class in the *Paprock* Class Action — which we have affirmed in this appeal — we have grave concerns whether Clarke can proceed in good faith with the motion.

DISPOSITION

The July 22, 2013 order denying Clarke leave to intervene is affirmed.  Clarke's appeal from the September 13, 2013 judgment is dismissed.  The December 9, 2013 order dismissing Clarke's motion to vacate the judgment is reversed and the matter is remanded to the trial court with directions to address forthwith the issues raised in Clarke's October 2013 motion to vacate and Plaintiffs' and First Transit's oppositions to the motion.  In the interests of justice, the parties shall bear their respective costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.


34