Filed 12/11/13

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | | |
|---|---|---|
| ALFREDO VILLACORTA, | | |
| Plaintiff and Respondent, | | E054329 |
| v. | | (Super.Ct.No. CIVVS807250) |
| CEMEX CEMENT, INC., | | OPINION |
| Defendant and Appellant. | | |

APPEAL from the Superior Court of San Bernardino County. Gilbert G. Ochoa, Judge. Affirmed.

Stone Rosenblatt Cha, Stone Cha & Dean, Gregory E. Stone, Robin M. McConnell and Robyn M. McKibben for Defendant and Appellant.

Affeld Grivakes Zucker, David W. Affeld; Mesriani & Associates and Rodney Mesriani for Plaintiff and Respondent.

Alfredo Villacorta (Villacorta) sued Cemex Cement, Inc. (Cemex) for (1) wrongful termination in violation of public policy, (2) intentional infliction of emotional distress, and (3) national origin discrimination. During closing argument,

1

Villacorta's trial attorney asserted Villacorta suffered $44,000 in lost wages as a result of the wrongful termination. The jury awarded Villacorta $198,000 for lost wages, but nothing for the other two causes of action. Cemex moved for a new trial and/or judgment notwithstanding the verdict (JNOV) due, in part, to substantial evidence not supporting the damages award. The trial court denied Cemex's motions. Cemex contends the trial court erred by denying the JNOV motion because substantial evidence does not support a lost wage award of $198,000. Cemex also contends the trial court erred by not reducing the damage award because the award was excessive. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A.    VILLACORTA'S EMPLOYMENT

Cemex is a large cement production company with a plant in Victorville. Villacorta began working for Cemex, in Victorville, in June 2003; Villacorta transferred to Victorville from Cemex's plant in the Philippines where he worked for 15 years. Villacorta has a mechanical engineering degree. Villacorta worked as a maintenance planner at Cemex in Victorville, which meant he helped with maintaining the plant's equipment. In 2007, Cemex began considering employee layoffs due to the difficult economy. Hundreds of employees were laid off from Cemex from 2007 through 2009. Villacorta was laid off from Cemex on February 22, 2008. In February 2008, Villacorta was earning an annual salary of $65,699. Villacorta asserted he was laid off because he is Filipino, and the Cemex managers preferred Venezuelans. Villacorta remained

2

unemployed for approximately eight months. During that time, Villacorta suffered anxiety and depression.

Villacorta and his family moved from Victorville to Corona in order to be closer to Villacorta's wife's place of work. On October 15, 2008, Villacorta began work as a maintenance supervisor for National Cement (National). At National, Villacorta earned an annual salary of approximately $69,300. National was located in Lebec, California, which was in the Bakersfield area. Villacorta's one-way commute from Corona to Lebec would be approximately two hours if there was no traffic; three hours with traffic. Rather than commute five to six hours per day, Villacorta rented a room in Lancaster, California, for $450 per month. Lancaster was approximately one hour away from Lebec, but Villacorta could not find a closer room rental. Villacorta was away from his family five days per week. He went home to Corona on weekends.

### B.     VILLACORTA'S LAWSUIT

Villacorta sued Cemex for (1) wrongful termination, (2) intentional infliction of emotional distress, and (3) national origin discrimination. In the complaint, within the wrongful termination cause of action, Villacorta alleged he "suffered and continues to suffer substantial humiliation, serious mental anguish, and emotional and physical distress, on account of which [Villacorta] is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this court but is presently unknown to [Villacorta], who will either seek leave to amend this complaint upon ascertaining such information, or will prove the same at the time of trial." Also

3

within the wrongful termination cause of action, Villacorta alleged he was entitled to punitive or exemplary damages.

During closing arguments, Villacorta's trial attorney asserted Villacorta suffered $44,000 in lost wages for the eight months he was unemployed. The wrongful termination claim was based upon Villacorta having been terminated due to being Filipino.

C.     JURY INSTRUCTION

The trial court gave the jury the following instructions for determining wrongful termination damages: "'If you find that the defendant discharged plaintiff in violation of public policy, then you must decide the amount of damages that plaintiff has proven he is entitled to recover, if any. To make that decision, you must:

"'1. Decide the amount that the plaintiff would have earned up to today, including any benefits and pay increases; and

"'2. Add the present cash value of any future wages and benefits that he would have earned for the length of time the employment with defendant was reasonably certain to continue; and

"'3. Add damages for emotional distress if you find that defendant's conduct was a substantial factor in causing that harm.'"

In regard to mitigating damages, the trial court instructed the jury as follows: "'Defendant claim[s] that[] if plaintiff is entitled to any damages, they should be reduced by the amount that he could have earned from other employment. To succeed, defendant must prove all of the following:

4

"'1. That employment comparable or substantially similar to plaintiff's former job was available[;]

"'2. That plaintiff failed to make reasonable efforts to seek this employment; and

"'3. That the amount that the plaintiff could have earned from this employment [*sic*].

"'In determining whether the employment[] was comparable or substantially similar, you should consider, among other factors, whether:

"'(A) The nature was different from plaintiff's employment with defendant;

"'(B) The new position was substantially inferior to plaintiff's former position[;]

"'(C) The salary, benefits, and hours of the job were similar to plaintiff's former job;

"'(D) The new position required similar skills, background, and experience;

"'(E) The job responsibilities were similar; and

"'(F) The job was in the same locality.

"'Before projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was comparable, or substantially similar, to that of which the employee has been deprived; employee's rejection of or failure to seek other available employment of a different or inferior kind may not be resorted to in order to mitigate damages.'"

### D. JURY QUESTIONS

After the case was given to the jury, the trial judge spoke to the jury in open court because the jury was having difficulty reaching verdicts. The jury was having difficulty coordinating the jury instructions with the different causes of action. The foreperson explained that the jury had discussed one cause of action while accidentally using the instruction for a different cause of action. The foreperson complained that the wording on the jury instructions was confusing. The trial court and jury agreed to have the attorneys give 20 minute closing arguments, to help the jury through its confusion. The trial court gave the jurors an opportunity to ask questions, which could then be addressed during the 20 minute arguments.

One juror asked a question about the verdict form. The juror said, "On the two forms, there are specific dollar amounts that are for each line item. They're on both pages. And on one of the instructions it says, you must consider up to [the] present. [¶] . . . [¶] . . . Does that mean it's this dollar figure, which is the multiplication of his wage to [the] present or is that left up to the jury. And then once you get that question answered, you can turn the page. Now you have to answer that exact same question again for Count No. 2, which when you read the jury instructions, it really got really muddy. And I don't know whether—I guess we might need some clarification on. Is that up to the jury? The amount?"

The trial court responded, "It's up to you. The amount is up to you." The juror said, "The jury instructions didn't say that. And we got hung up there for a long time." The trial court explained, "Everything is up to you. Okay. So if you think that a person should get their lost wages up to today, then that—whatever you figure out, that's the

6

amount. If you think it should be no wages, then that's the amount. If you think it should be, you know, maybe a year's worth or whatever figure you come up with, it's up to you."

After the jury left the courtroom, the trial court said to the attorneys, "I want to get any objections that you might have with respect to any of the comments that the Court made to the jury. You need to put them on the record now." Neither party raised an objection.

### E. VERDICT FORM

The verdict form completed by the jury reflects the following:

"5. What are Alfredo Villacorta's damages?

| "Past economic loss: | lost salary | $198,000.00 |
| | "lost bonuses | $ 0 |
| "Past mental suffering, emotional distress | | $ 0 |
| "Future mental suffering, emotional distress | | $ 0 |
| "TOTAL | | $198,000.00" |

### F. JNOV MOTION

On June 2, 2011, Cemex filed a JNOV motion. In the motion, Cemex asserted the jury erroneously awarded Villacorta three years of lost wages—from the time he lost his job through the time of trial. Cemex asserted the evidence reflected Villacorta was only entitled to eight months of lost wages—from the time he lost his job until the time he began work for National.

Villacorta opposed the motion. Villacorta asserted his job at National was not comparable to his job at Cemex, and therefore, he was entitled to lost wages through the time of trial, i.e. $198,000 ($66,000 x 3 years). Villacorta argued the evidence that he had to live away from his family five days per week, or commute six hours per day, would support a finding that the National job was not comparable to the Cemex job, and therefore substantial evidence supported a finding that the damages were not mitigated by the National job.

Villacorta also asserted Cemex waived any objection to the jury's award of three years of lost wages by not objecting when the trial court told the jury it could award "lost wages up to today." The trial court took the matter under submission and issued a minute order denying the JNOV motion. The minute order does not reflect the reasons for the trial court's decision.

## DISCUSSION

### A.    SUBSTANTIAL EVIDENCE

Cemex contends the trial court erred by denying his JNOV motion because the $198,000 award for lost wages is not supported by substantial evidence. We disagree.[1]

"'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the

---

[1] Villacorta asserts Cemex forfeited this argument by failing to object when the trial court instructed the jury it could award Villacorta his lost wages through the time of trial. We conclude Cemex has not forfeited the issue for appeal because Cemex has raised the issue in the context of substantial evidence. (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17 [substantial evidence issues are an exception to the forfeiture rule].)

verdict, that there is no substantial evidence in support. [Citation.] [¶] . . . As in the trial court, the standard of review [on appeal] is whether any substantial evidence— contradicted or uncontradicted—supports the jury's conclusion.' [Citation.]" (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770.)

Our Supreme Court discussed mitigating wrongful termination damages in *Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176: "The general rule is that the measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, less the amount which the employer affirmatively proves the employee has earned or with reasonable effort might have earned from other employment. [Citations.]" (*Id*. at pp. 181-182.) However, in order for the employee's earnings to be applied in mitigation, "the employer must show that the other employment was comparable, or substantially similar, to that of which the employee has been deprived[.]" (*Id*. at p. 182.) Thus, if the new job is different or inferior, then the wages from that job may not be used to mitigate damages. (*Ibid*.; *Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 871.)

Wages actually earned from an inferior job may not be used to mitigate damages because if they were used then it would result "in senselessly penalizing an employee who, either because of an honest desire to work or a lack of financial resources, is willing to take whatever employment he can find." (*Rabago-Alvarez v. Dart Industries, Inc.* (1976) 55 Cal.App.3d 91, 99.) The location of the new job is one of the factors to consider in determining whether the new job is inferior. (See *California School*

*Employees Assn. v. Personnel Commission* (1973) 30 Cal.App.3d 241, 249, 255 [considering the location of available jobs].)

The evidence in the instant case reflects Villacorta's job at National was located two to three hours away from the home where his family resided. As a result, Villacorta rented a room Lancaster, which was one hour away from National's plant in Lebec. Villacorta could not find a closer rental because Lebec was "kind of a remote area." As a result, Villacorta was only able to see his family on weekends. Villacorta's family consisted of his wife and two daughters, who were seven and 11 years old at the time of trial.

Based upon the foregoing evidence, a jury could reasonably conclude the job at National was inferior to the job at Cemex because of the burden placed on Villacorta by the location of the job. The burden included not seeing his family during workdays and having to pay for a second residence. Since the jury could reasonably conclude the National job was inferior, it was reasonable for the jury to not use Villacorta's National wages to mitigate the Cemex losses.

Villacorta lost his job at Cemex on February 22, 2008. The jury reached its verdict on May 17, 2011. Villacorta earned an annual salary of $65,699 when he left Cemex in February 2008. $65,699 multiplied by three, for the three-year period from February 2008 through February 2011, equals $197,097. It can be inferred that the extra $903 accounts for the month of March 2011. Since the National job could be found to be inferior, and therefore not used to mitigate the Cemex losses, the jury's

10

award of lost wages is supported by substantial evidence in the record, i.e., three years of lost salary at an annual rate of $65,699.

Cemex asserts there is not substantial evidence supporting an award of lost wages in the amount of $198,000 because Villacorta's attorney only argued that Villacorta lost eight months of pay, i.e., $41,877. Argument by counsel is not evidence. (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1173.) Therefore, we do not consider counsel's argument in determining whether there is substantial evidence to support the verdict. As a result, we find Cemex's argument to be unpersuasive.

Next, Cemex contends wages actually earned from a new job, even from an inferior job, must be used to mitigate wrongful termination damages.[2] In support of this legal argument, Cemex cites a federal district court opinion, *Priest v. Rotary* (1986) 634 F.Supp. 571. As set forth *ante*, California state law provides wages actually earned at an inferior job need not be used to mitigate damages because doing so would "result in senselessly penalizing an employee who, either because of an honest desire to work or a lack of financial resources, is willing to take whatever employment he can find." (*Rabago-Alvarez v. Dart Industries, Inc.*, *supra*, 55 Cal.App.3d at p. 99.) We elect to follow the state law, and therefore find Cemex's reliance on federal law to be unpersuasive. (See *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 594 ["'federal law does not control unless it is more beneficial to employees than the state law'"].)

---

[2] Although this argument does not comport with a substantial evidence assertion, we will address the issue because it is easily resolved.

At oral argument, Cemex asserted if Villacorta suffered by having to be away from his family, then the damages associated with that suffering were non-economic in nature, so the jury's award of economic damages was not supported by the evidence. Cemex's argument is not persuasive because the jury was not evaluating damages associated with Villacorta's suffering. Rather, the jury had to analyze whether Villacorta mitigated his economic damages by obtaining the job at National. (See *California School Employees Assn. v. Personnel Commission*, *supra*, 30 Cal.App.3d at pp. 249, 255 [considering the location of available jobs].) So, the trier of fact was not awarding damages for Villacorta's emotional suffering, which would be non-economic damages. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 600 [defining non-economic damages].) Instead, the jury found Villacorta's damages were not mitigated, because the location of the National job was inferior. The question of whether Villacorta mitigated his damages concerns economic damages.

Moreover, the job was not inferior simply due to emotional suffering. For example, the jury could find the location of the National job was inferior because Villacorta was required to pay for two residences—one for his family and one for himself. The evidence supports a finding that the location of the job was inferior for purely economic reasons. In sum, we find Cemex's argument to be unpersuasive.

B.    EXCESSIVE DAMAGES

Cemex contends the trial court erred by "allow[ing] the jury's $198,000 verdict to stand," because the damages were excessive. Cemex asserts Villacorta was given a "windfall" by the jury because he received his lost wages from Cemex for the time

period when he was employed by National. Although unclear from the briefing, we assume this argument relates to the trial court's ruling on Cemex's motion for new trial.

"We review the jury's award under the substantial evidence standard and defer to the trial court's denial of a new trial motion based on excessive damages because of the trial judge's greater familiarity with the case." (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 720.) We have performed a substantial evidence analysis *ante*, and concluded substantial evidence supports the jury's award of damages. As a result, we conclude the trial court did not err.

Cemex asserts Villacorta should only have been awarded damages for the eight months he was unemployed. As set forth *ante*, the jury could reasonably conclude from the evidence that the National job was inferior to the Cemex job, and therefore the National wages could not be used to mitigate the Cemex losses. In sum, we find Cemex's argument to be unpersuasive.

## DISPOSITION

The judgment is affirmed. Respondent, Alfredo Villacorta, is awarded his costs on appeal.

MILLER _____
                                    J.

We concur:

McKINSTER _____
            Acting P. J.

CODRINGTON _____
                    J.

13