Filed 2/10/16  Bekono v. Reed Group CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THOMAS BEKONO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>REED GROUP, LTD.,<br><br>    Defendant and Respondent. | D067705<br><br><br>  (Super. Ct. No. 37-2013-00040946-CU-WT-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.


Thomas Bekono, in pro. per., for Plaintiff and Appellant.

Gordon & Rees, Roger M. Mansukhani, Blake R. Jones and Brian S. Fong for Defendant and Respondent.

In this appeal, the trial court granted a summary judgment in favor of defendant Reed Group, Ltd. (the Reed Group) and against plaintiff Thomas Bekono as to two causes of action.  Earlier the court had sustained a demurrer to a third cause of action

without leave to amend. Bekono appeals from the resulting judgment, arguing error not only as to causes of action alleged against the Reed Group, but also as to other claims he contends he asserted against the Reed Group.

Based on the record before us, Bekono asserted only three causes of action against the Reed Group, and Bekono has not met his burden of establishing reversible error in the disposition of any of the three causes of action. Accordingly, we affirm the judgment.

## I.

## BURDENS ON APPEAL

In the trial court, at times Bekono was represented by counsel, and at times he represented himself. On appeal, Bekono has been representing himself. In both the trial and appellate courts, the procedural rules apply the same to self-represented parties as to parties represented by counsel. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

The judgment of the trial court is presumed correct, and the appellant has the burden of establishing reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Accordingly, where the record is silent, " 'error must be affirmatively shown.' " (*Ibid.*; accord, *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 (*Maria P.*) [burden on appellant to provide an adequate record of proceedings]; *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [" 'if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed' "]; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 (*Hernandez*) ["Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]."].) To overcome the presumption of

2

correctness, "a party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*).)

A party forfeits an argument raised for the first time on appeal unless the party "demonstrate[s] either that it preserved these arguments in the trial court, or that it may properly raise such arguments for the first time on appeal." (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 798 (*Dietz*); see *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31 ["theories not raised in the trial court may not be raised for the first time on appeal"].) An appellate court has the discretion to consider " 'a pure question of law on undisputed factual evidence' " for the first time on appeal. (*Dietz*, at p. 800.) However, this "forgiving approach" (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417) is limited to " 'either (1) a noncurable defect of substance such as lack of jurisdiction or failure to state a cause of action, or (2) a matter affecting the public interest or the due administration of justice' " (*Dietz*, at p. 800). The present appeal does not involve either of these exceptions.

Additionally, in the briefing, an appellant must provide citations to the record for purposes of directing the court to the pertinent evidence or other matters that demonstrate reversible error. (Cal. Rules of Court, rule 8.204(a)(1)(C);[1] *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.) We are not responsible for searching the appellate record for facts to support the contentions on appeal. (*Del Real v. City of Riverside*

---

[1] All further rule references are to the California Rules of Court.

(2002) 95 Cal.App.4th 761, 768; *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1301 [appellate court does not provide "an unassisted review of the record"].) An appellant who fails to cite to the record forfeits the issue or argument on appeal that is presented without the record reference. (*City of Lincoln*, at p. 1239; *Del Real*, at p. 768; *Annod Corp.*, at p. 1301.)

Likewise, an appellate brief must "support each point by argument and, if possible, by citation of authority." (Rule 8.204(a)(1)(B).) Where a party fails to cite authority or present argument, the party forfeits the argument on appeal. (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 949.)

Pursuant to these procedures, we have considered only those portions of the briefs that have been properly prepared. (Rule 8.204(e)(2)(C).) Further, as we explain *post*, due to the limited record and briefing deficiencies, our ability to provide detailed background or to reach the merits of many of Bekono's arguments is restricted accordingly.[2]

II.

FACTUAL AND PROCEDURAL BACKGROUND

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when

---

2      The brief Bekono filed with the clerk is not the same brief that he submitted electronically. We have relied on the brief filed with the clerk.

it ruled on that motion.' "[3] (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.) We consider all the evidence in the moving and opposing papers, except evidence to which objections were made and sustained, liberally construing and reasonably deducing inferences from Bekono's evidence, resolving any doubts in the evidence in his favor. (*Id.* at p. 717; Code Civ. Proc., § 437c, subd. (c).)

Bekono has not provided copies of his original or first amended complaints. Minute orders in the record reflect that Bekono initiated the underlying action in March 2013, and defendants other than the Reed Group brought a successful demurrer and motion to strike the first amended complaint with leave to amend as to some of the causes of action.

By augmentation, the Reed Group has provided us with a copy of Bekono's verified second amended complaint (SAC) served in March 2014. Bekono alleged 36 causes of action, 10 of which included a claim against the Reed Group. Other named defendants included Rohr, Inc., dba Goodrich Aerospace (Rohr);[4] United Technologies Corporation, dba UTC Aerospace Systems (UTC); Goodrich Corporation (Goodrich), the

---

3    In his opening brief, Bekono does not raise any issue as to the one cause of action in a superseded complaint for which the Reed Group's demurrer was sustained without leave to amend.

4    In the caption and body of the SAC, Bekono refers to this entity as "Rohr, Inc., dba Goodrich Aerostructures." In the paragraph of the complaint identifying the defendants, Bekono refers to the entity as "Rohr, Inc., dba Goodrich Aerospace." In a cross-complaint, Rohr, Inc. identifies itself as "Rohr, Inc., dba UTC Aerospace Systems." These differences do not affect this appeal. As we explain in greater detail at footnote 9, *post*, Rohr is not a party to this appeal.

alleged parent of Rohr and UTC; more than 25 individuals, most of whom are alleged to be employees of Rohr or UTC; and Donald Kripke, M.D., who is alleged to be " 'the company psychiatrist.' "  Bekono asserted numerous claims allegedly resulting from or related to his employment by Rohr.  As relevant to the Reed Group, Bekono asserted claims based on the allegation that the Reed Group was a "third-party administrator" hired by Rohr "to administer employee leave."  More specifically, Bekono complained that the Reed Group did not properly handle the medical leave he took in 2011 and 2012, "conflating" his statutory rights (under the California Family Rights Act (CFRA, Gov. Code, § 12945.2)) and the federal Family and Medical Leave Act (FMLA, 29 U.S.C. § 2601 et seq.) with his employer-sponsored rights to short-term disability benefits (STD).  The Reed Group demurred to the SAC.

Meanwhile, before the court heard the Reed Group's demurrer to the SAC, other defendants' demurrers to the SAC were sustained in part with leave to amend, and Bekono served his verified third amended complaint (TAC) as to all parties on May 19, 2014.  Four days later, on May 23, 2014, the parties filed a stipulation to dismiss, and the court dismissed, various parties and causes of action from the TAC.  From what we can discern from the stipulation, the TAC named parties and asserted causes of action the court had precluded in its prior rulings.  *After* the dismissals effected by the stipulation and order, the TAC contained three causes of action against the Reed Group related to its handling of Bekono's medical leave:  (1) the 14th cause of action for violation of Civil

6

Code section 56.26;[5] (2) the 16th cause of action for invasion of privacy; and the 17th cause of action for libel.

About a month later, in late June 2014, the court heard the Reed Group's demurrer to the SAC, ruled that the filing of the TAC mooted the Reed Group's demurrer, and set a hearing date two months later for the Reed Group's demurrer to the TAC. In late August 2014, the court heard the demurrer and: (1) sustained without leave to amend the general demurrer to the cause of action for violation of the CMIA;[6] (2) overruled the general demurrer to the cause of action for defamation; and (3) sustained with leave to amend the special demurrer to the cause of action for libel.[7]

In early September 2014, Bekono filed his verified fourth amended complaint (FAC), the operative complaint, in which he alleged the same basic underlying facts related to the Reed Group as in the SAC, described *ante*. Bekono asserted two causes of action against the Reed Group: (1) the 16th cause of action, for invasion of privacy; and

---

5       The Confidentiality of Medical Information Act (the CMIA) provides in part: "No person or entity engaged in the business of furnishing administrative services to programs that provide payment for health care services shall knowingly use, disclose, or permit its employees or agents to use or disclose medical information possessed in connection with performing administrative functions for a program, except as reasonably necessary in connection with the administration or maintenance of the program, or as required by law, or with an authorization." (Civ. Code, § 56.26, subd. (a).)

6       At the hearing, Bekono (through retained counsel) "concede[d] the demurrer on this point."

7       Bekono did not include in the record on appeal any pleadings from the demurrer proceedings. According to the court's minute order, in opposition to the Reed Group's demurrer to the libel cause of action, Bekono requested leave to amend to clarify the allegations as to each defendant.

(2) the 17th cause of action, for libel. More specifically, Bekono alleged that, in administering his claims for medical leave, the Reed Group: (1) violated Bekono's right to privacy by "demanding, obtaining, sharing, fraudulently creating and using [Bekono's] confidential information beyond the limits allowed by [the CMIA]"; and (2) conspired with others to defame Bekono by "alter[ing] or caus[ing] to be altered [Bekono's] medical information so as to insinuate or lend 'credence' to the knowingly false insinuations of employees of [Rohr] that [Bekono] was suffering from an HIV/AIDS-related medical condition and that [Bekono] presented a 'risk of harm to himself or others.' " The Reed Group answered the FAC, denying all material allegations and asserting various affirmative defenses.

In October 2014, the Reed Group filed a motion for summary judgment as to the FAC or, in the alternative, summary adjudication as to each of the two causes of action in the FAC. In support, the Reed Group filed a separate statement of undisputed material facts, a memorandum of points and authorities, five declarations, a request for judicial notice, and a notice of lodgment of 32 exhibits. With regard to the cause of action for invasion of privacy, the Reed Group argued Bekono could not maintain such a claim based either on the mental health evaluation form submitted to the Reed Group on Bekono's behalf by Bekono's doctor or on the Reed Group's internal absence report. With regard to the cause of action for defamation, the Reed Group argued that it neither disclosed Bekono's confidential information to Rohr nor obtained more medical information than it was entitled to in processing Bekono's application for benefits. As to both causes of action, the Reed Group presented evidence in support of its position and

8

argued that Bekono did not have contradictory evidence that raised a triable issue of material fact.

The record on appeal does not contain any opposition by Bekono.[8] The Reed Group tells us that Bekono apparently "served, but did not file, an Opposition" in the trial court. Our review of the record suggests that the trial court had before it written opposition from Bekono.

In reply to what Bekono served, the Reed Group filed a memorandum of points and authorities, a declaration, replies to two separate statements, evidentiary objections, and a notice of lodgment of an additional exhibit.

The court entertained oral argument, took the matter under submission and later issued a minute order granting the Reed Group's motion for summary judgment. More specifically, the court denied Bekono's request for judicial notice, disregarded Bekono's evidentiary objections, declined to consider arguments raised for the first time at the hearing, sustained the Reed Group's evidentiary objections, and ruled as follows on the merits of the motion: The Reed Group met its burden of demonstrating that Bekono could not establish essential elements of his causes of action alleging invasion of privacy and libel, but Bekono did not meet his responsive burden of establishing a triable issue of material fact.

---

8    In support of his opening brief on appeal, Bekono filed a Notice of Lodgment. However, because there is no indication that the 17 exhibits attached to the notice were submitted to the trial court, we have not considered them on appeal. (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.)

In March 2015, the court filed a judgment, the Reed Group gave notice of its entry, and Bekono timely appealed.[9]

### III.

### DISCUSSION

Bekono presents seven arguments on appeal, six of which contend that the trial court erred:  (1) in sustaining the Reed Group's objections to the evidence submitted by Bekono in opposition to the motion for summary judgment; (2) in granting the Reed Group's motion for summary judgment; (3) in "[p]rematurely [r]elieving" the Reed Group from the allegations in the FAC after granting the Reed Group's motion for summary judgment; (4) in allowing the Reed Group to challenge Bekono's claims; (5) in failing to recognize Bekono's claim for violation of the Tom Bane Civil Rights Act, Civil Code section 52.1; and (6) in failing to rescind or void the transfer of Bekono's medical information to the Reed Group.  In a seventh argument, Bekono asks that we enter judgment in his favor against the Reed Group.  None of Bekono's arguments provides a basis on which to reverse the judgment.

---

9      In his FAC, Bekono also alleged 20 causes of action against some or all of the defendants in the SAC (listed *ante*), again naming Rohr, UTC, Goodrich, numerous employees of Rohr or UTC, and Kripke.  Rohr and two of its employees previously had named Bekono in an amended cross-complaint.  They filed a motion for summary judgment on their amended cross-complaint, which the court granted at the same time it granted the Reed Group's motion for summary judgment.  Bekono appealed from the order granting summary judgment on the amended cross-complaint, and the cross-complainants filed a protective cross-appeal in the event the appellate court had jurisdiction over Bekono's appeal.  Those appeals were part of the present appeal.  By order filed May 26, 2015, Bekono's appeal from the grant of summary judgment on the amended cross-complaint and cross-complainants' cross-appeal were dismissed for lack of jurisdiction.

A. *Bekono Did Not Meet His Burden of Establishing Reversible Error in the Grant of Summary Judgment (FAC's 16th & 17th Causes of Action)*

The trial court did not err either in sustaining the Reed Group's evidentiary objections or in granting summary judgment.

1. *Sustaining Evidentiary Objections*

The Reed Group filed 68 separately numbered, specifically identified evidentiary objections to statements Bekono proffered in support of his opposition to the Reed Group's motion for summary judgment, as follows: (1) three objections to Bekono's declaration; (2) 57 objections to Bekono's separate statement in opposition to the Reed Group's separate statement of undisputed material facts in support of its motion for summary judgment; and (3) eight objections to Bekono's separate statement of issues of material facts. Bekono did not include in the record on appeal copies of his declaration, his responsive separate statement, or his separate statement.[10] The trial court sustained all of the Reed Group's evidentiary objections.

We review for an abuse of discretion the trial court's ruling on the exclusion of evidence in summary judgment proceedings. (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427.) A trial court abuses its discretion only when, in its exercise, the ruling is arbitrary or the trial court " 'exceeds the bounds of reason, all of the

---

10      Bekono does not explain the difference(s) between his two separate statements. In its response to Bekono's separate statement of issues of material fact, the Reed Group objected to the document on the basis that, since Bekono did not have pending a motion for summary judgment, Bekono's 70 allegedly undisputed material facts should be disregarded. The Reed Group nonetheless responded, asserting evidentiary objections to all but one of Bekono's statements.

11

circumstances before it being considered.' " (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*).)

To succeed on appeal, Bekono is required to establish, at a minimum: (1) where in the record he demonstrated "[t]he substance, purpose, and relevance of the excluded evidence was made known to the [trial] court" (Evid. Code, § 354, subd. (a)); (2) the error in excluding the evidence; and (3) how the error resulted in a "miscarriage of justice" (often referred to as prejudice) (Cal. Const., art. VI, § 13; Evid. Code, § 354). (See Code Civ. Proc., § 475; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)[11] For purposes of this analysis, a "miscarriage of justice" may be found on appeal " ' "only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*Pool*, at p. 1069; accord, Code

---

[11] "No judgment shall be set aside . . . in any cause, on the ground of . . . the improper . . . rejection of evidence . . . , unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has *resulted in a miscarriage of justice*." (Cal. Const., art. VI, § 13, italics added.)

A judgment shall be reversed "by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of *resulted in a miscarriage of justice and it appears of record* that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; . . . ." (Evid. Code, § 354, italics added.)

". . . No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it *shall appear from the record* that such error, ruling, instruction, or defect *was prejudicial*, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that *a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed*. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Code Civ. Proc., § 475, italics added.)

Civ. Proc., § 475; *San Diego Gas & Electric Co. v. Schmidt* (2014) 228 Cal.App.4th 1280, 1301-1302.) In this context, "reasonably probable" means "more than an *abstract possibility*." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 (*College Hospital*).) Prejudice is not presumed (Code Civ. Proc., § 475), and the appellant bears the burden of establishing both "a clear case of abuse and miscarriage of justice." (*Shaw*, *supra*, 170 Cal.App.4th at p. 281.) Bekono has not attempted to meet, let alone met, these requirements.[12]

Thus, on both procedural and substantive grounds, Bekono has not met his burden of establishing a prejudicial abuse of discretion in the trial court's exclusion of the evidence sustained by the Reed Group's objections.

    2.    *Granting Summary Judgment*

We review de novo whether the trial court erred in granting the Reed Group's motion for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) A defendant is entitled to a summary judgment on the basis that the "action has no merit" (Code Civ. Proc., § 437c, subd. (a)(1)) only where the court is able to determine from the evidence presented that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (*id.*, § 437c,

---

12    As a related procedural issue, Bekono's presentation on appeal violates the general rule that requires an appellate brief to support each point by reference to the record on appeal. (Rule 8.204(a)(1)(C).) On appeal, the appellant has a duty " 'to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation "is furnished on a particular point, the court may treat it as waived." ' " (*Lonely Maiden Productions, LLC v. Golden Tree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384.)

13

subd. (c)).  A cause of action "has no merit" if one or more of the elements of the cause of action cannot be established, or if an affirmative defense to the cause of action can be established.  (*Id*., § 437c, subd. (*o*).)

Thus, a defendant like the Reed Group has the burden of *persuasion* that one or more elements of the cause of action at issue "cannot be established" or that "there is a complete defense to that cause of action."  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849, 850, 853-854.)  In attempting to meet this burden, the defendant has the initial burden of *production* to make a prima facie showing of the nonexistence of any triable issue of material fact.  (*Aguilar*, at p. 850.)  If the defendant meets this burden, then the burden of *production* shifts to the plaintiff to establish the existence of a triable issue of material fact.  (*Id.* at pp. 850-851.)

In this appeal from the grant of a summary judgment, therefore, we determine first whether the Reed Group's showing establishes an entitlement to judgment in its favor; and if so, we then determine whether Bekono's showing establishes a triable issue of material fact.  (*Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1042 (*Garcia*).)

a.      *16th Cause of Action — Invasion of Privacy*

The elements of a cause of action for a violation of the right to privacy under article I, section 1, of the California Constitution[13] are:  "(1) a legally protected privacy

---

13      "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  (Cal. Const., art. I, § 1.)

interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest." (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 338.) As applicable to the present appeal, the legally protected interests include Bekono's right to be free from (1) public disclosure of private facts, and (2) intrusion into his private affairs.[14] (*Shulman*, *supra*, 18 Cal.4th at p. 214.)

The elements of a claim for public disclosure of private facts include " '(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern.' " (*Shulman*, *supra*, 18 Cal.4th at p. 214.) The elements of a claim for intrusion into private affairs include: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." (*Id*. at p. 231.) Based on the allegations in the FAC, Bekono contends that the Reed Group publicly disclosed private facts and intruded into his private affairs by "demanding, obtaining, sharing, fraudulently creating and using [Bekono's] confidential information beyond the limits allowed by [the CMIA]."[15]

---

14    Additional legally protectable interests, which are not at issue here, include "presentation of the plaintiff to the public in a false light and appropriation of image or personality." (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 214, fn. 4 (*Shulman*).)

15    Although Bekono further alleges that the Reed Group "coerced" the commission of these intrusions, he does not allege how it may have done so. In his opening brief Bekono argues that "it is possible for a fact finder to determine that the Reed Group's use of [the] STD form was indeed coercive," but Bekono does not direct us to evidence of what he contends is the STD form or the Reed Group's use of it.

In support of its motion for summary judgment, the Reed Group presented evidence that it neither obtained more medical information than it was entitled to nor disclosed the information to anyone not entitled to it. As such, the Reed Group met its initial burden of producing evidence that established a prima facie showing of the nonexistence of any triable issue of material fact entitling it to judgment in its favor. (*Aguilar*, *supra*, 25 Cal.4th at p. 850; *Garcia*, *supra*, 186 Cal.App.4th at p. 1042.)

The burden of production then shifted to Bekono to establish the existence of a triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851; *Garcia*, *supra*, 186 Cal.App.4th at p. 1042.) Because the record on appeal does not contain Bekono's opposition to the Reed Group's motion, we have no choice but to conclude that Bekono did not meet his responsive burden. (*Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502; *Ballard*, *supra*, 41 Cal.3d at p. 574.) At oral argument, Bekono suggested that his presentation to the trial court at the hearing on the Reed Group's motion included his substantive opposition to the motion. However, Bekono's presentation to the trial court was not *evidence* — which is what was required in opposition to the Reed Group's *evidence* of a prima facie showing of the nonexistence of a triable issue of fact (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851) — since argument is not evidence. (*Villacorta v. Cemex Cement, Inc.* (2013) 221 Cal.App.4th 1425, 1433 (*Villacorta*).) For this reason, Bekono did not establish error in the grant of summary judgment as to the 16th cause of action for invasion of privacy.

16

b.       *17th Cause of Action — Defamation (Libel)*

The elements of a cause of action for libel under Civil Code sections 45 and 45a[16] are "a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries . . . ." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242; see 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782.)  Based on the allegations in the FAC, Bekono contends that the Reed Group altered certain entries on his medical records and shared an altered diagnosis with people at Rohr (his employer).  More specifically, Bekono alleged that the Reed Group altered forms signed by his treating psychiatrist such that they indicated Bekono had " 'suicidal' and 'homicidal' ideations" based on a diagnosis of "HIV/AIDS or 'post-viral asthenic syndrome' " and then forwarded these forms to employees of Rohr in the course of administering Bekono's leave — thereby "publish[ing]" these false " 'diagnoses' or 'observations' " to third parties.

In support of it motion for summary judgment, the Reed Group presented evidence both that it did not make any changes to the allegedly defamatory statements on the documents and that it did not disclose the purportedly objectionable documents to anyone at Rohr.  As such, the Reed Group once again met its initial burden of producing

---

16       "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  (Civ. Code, § 45.)  "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face.  Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. . . ."  (*Id*., § 45a.)

17

evidence that established a prima facie showing of the nonexistence of any triable issue of material fact entitling it to judgment in its favor.  (*Aguilar*, *supra*, 25 Cal.4th at p. 850; *Garcia*, *supra*, 186 Cal.App.4th at p. 1042.)

The burden of production then shifted to Bekono to establish the existence of a triable issue of material fact.  (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851; *Garcia*, *supra*, 186 Cal.App.4th at p. 1042.)  Once again, because the record on appeal does not contain Bekono's opposition to the Reed Group's motion, and because Bekono's oral presentation to the trial court was not evidence (*Villacorta*, *supra*, 221 Cal.App.4th at p. 1433), we have no choice but to conclude that Bekono did not meet his responsive burden. (*Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502; *Ballard*, *supra*, 41 Cal.3d at p. 574.)

In his opening brief on appeal, Bekono presents the following six arguments that are not based on evidence:[17]  "defendant's claim of innocent motive or mere repetition of the code provided by treating physician or good faith does not establish a defense for libel per se"; "creation of business record[s], even for internal consumption is publication per se"; "the filling [*sic*] of this complaint and disclosure of DiLorenzo's[18] defamatory

---

17     On occasion Bekono cites to the reporter's transcript or to the (verified) FAC. However, "the argument of [a party] does not constitute evidence."  (*Beagle v. Vasold* (1966) 65 Cal.2d 166, 176; *Villacorta*, *supra*, 221 Cal.App.4th at p. 1433 [same].)  Also, "a party cannot rely on the allegations of his own pleadings, *even if verified*, to make or supplement the evidentiary showing required in the summary judgment context." (*College Hospital*, *supra*, 8 Cal.4th at p. 720, fn. 7, italics added.)

18     At the relevant times, Kristi DiLorenzo was a nurse case manager with the Reed Group.

statement in this litigation is actionable as compelled self-publication"; "publication in defamation can be proven by the defamed employee's testimony of his or her knowledge"; "publication of defamation may be proven by hearsay since publication is an operative fact"; and "DiLorenzo's publications motivated by malice." (Capitalization omitted.) However, Bekono forfeited any right he may have had to assert such arguments by not demonstrating that he preserved them for appeal by raising them first in the trial court.[19] (*Dietz*, *supra*, 177 Cal.App.4th at p. 798.) Even if we assume that these arguments are purely legal, we decline to exercise our discretion to consider them, because none involves a recognized exception to the forfeiture rule. (*Id.* at p. 800.) In any event, we note that none of the six arguments raises a triable issue of material fact in response to the Reed Group's *evidence* that the Reed Group did not make any changes to the allegedly defamatory statements on the documents or that the Reed Group did not disclose the purportedly objectionable documents to anyone at Rohr.

For these reasons, Bekono did not establish error in the grant of summary judgment as to the 17th cause of action for libel.

B.     *Additional Arguments*

In somewhat of a scattershot approach, Bekono presents five arguments that are not responsive to the grant of summary judgment. Once again, because Bekono has not demonstrated that he preserved these arguments for appeal by first raising them in the trial court, he has forfeited appellate review (*Dietz*, *supra*, 177 Cal.App.4th at p. 798);

_____

19     Of note, at page 31 of his opening brief, Bekono expressly acknowledges this rule of appellate procedure, citing a 1948 Court of Appeal opinion.

19

and none involves a recognized exception to the forfeiture rule (*id.* at p. 800). Nonetheless, we will deal briefly with each of the contentions.

First, Bekono argues that the trial court erred in "prematurely relieving [the Reed Group] from all allegations following its [summary judgment] ruling." (Capitalization omitted.) More specifically, Bekono contends that, because he used the (plural) word "defendant*s*" throughout the FAC, the Reed Group is not "exclude[d] . . . from any allegation" in the remaining 18 causes of action in the FAC. While the FAC may contain allegations relating to the Reed Group in other causes of action, Bekono clearly labeled each defendant he intended to name in each cause of action, and the Reed Group is not named in any of the causes of action other than the 16th (for invasion of privacy) and 17th (for libel). In response to a related argument, we cannot accept Bekono's position that the causes of action against the " 'Employer Defendant[s]' " also apply to the Reed Group, because in the FAC Bekono expressly *defined* " 'Employer Defendants' " to include only Rohr and UTC. Bekono further suggests that, on appeal, we must consider true all material allegations in the FAC and determine whether he has stated, or could possibly state, a cause of action under any legal theory. To the extent authority exists for such a contention — and we express no opinion — the case cited by Bekono is distinguishable on the basis it involved an appeal of a dismissal of an action after the court sustained a demurrer without leave to amend. (*Pollack v. Lytle* (1981) 120 Cal.App.3d 931, 936.) Bekono has not cited authority, and we are aware of none, for application of this principle in an appeal, as here, following the grant of a summary judgment.

20

Second, Bekono argues that the Reed Group "forfeited any unchallenged allegations or causes of action." (Capitalization omitted.) According to Bekono, the Reed Group "understood or should have reason to understand that as co-defendant to the complaint, all causable and properly pleaded allegations applied to it." As we just explained, however, by expressly naming *specific* defendants in specific causes of action — as Bekono does in the FAC — the claims in those causes action are not alleged against any *other* defendant.

Third, Bekono argues that the Reed Group's "polices and practice [are] tantamount to interference with civil rights by threats, intimidation, coercion and constitute[] a cover-up of Rohr's unlawful conduct (aiding and abetting)." (Capitalization omitted.) His argument is based on a cause of action under Civil Code section 52.1, which allows for the recovery of damages or injunctive relief by an individual whose constitutional or statutory rights have been violated by threats, intimidation or coercion. (See *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 338 [§ 52.1 is a civil rights statute enacted "to stem a tide of hate crimes"].) Once again, however, because Bekono has not asserted a claim *against the Reed Group* for a violation of section 52.1, there was no such claim for the Reed Group to defend against and there is no ruling of the trial court related to such a claim for us to review on appeal.

Fourth, Bekono contends the trial court erred in granting summary judgment because the "transfer of medical information to [the] Reed Group should be rescinded or void." (Some capitalization omitted.) In support of his position, Bekono analogizes his written authorization for the Reed Group's access and use of his medical information to a

21

contract. He then argues that, because he never had the requisite "consent . . . or mutual" assent to contract, he is entitled to rescind or void his written authorization. He bases the purported lack of consent on legal concepts associated with duress, menace and undue influence/constructive fraud. The problem with this argument, as with the preceding few arguments, is that the only causes of action Bekono asserted against the Reed Group in the FAC were for invasion of privacy and libel.[20] Thus, with regard to rescission based on duress, menace or undue influence/constructive fraud, the Reed Group was not called on to respond to such a claim, the trial court was not called on to rule on such a claim, and there is no decision as to such a claim for us to review on appeal.

Finally, in the summary of arguments in his opening brief, Bekono asks us to enter a judgment in his favor against the Reed Group "on all allegations of interference with civil rights afforded by the FMLA/CFRA as a matter of law." Although such a claim may have been included *in the SAC*, before the Reed Group was required to answer the SAC Bekono filed the TAC (and ultimately the FAC), which did not include such a claim against the Reed Group. In any event, Bekono misunderstands the role of this court in civil appeals: We do not issue judgments on superior court complaints in the first instance.

---

20     *In the TAC*, Bekono also alleged a cause of action against the Reed Group for violation of Civil Code section 56.26. (See fn. 5, *ante*.) The trial court sustained the Reed Group's demurrer to this cause of action without leave to amend, and on appeal Bekono raises no issues or arguments as to this ruling.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McINTYRE, Acting P. J.

AARON, J.