Filed 4/30/21

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MARIA MARTINEZ, | B292672 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC401746) |
| v. | |
| RITE AID CORPORATION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge. Affirmed as modified.

Morgan, Lewis & Bockius, Thomas M. Peterson, Kathryn T. McGuigan, and Robin M. Lagorio; Klein, Hockel, Iezza & Patel, Thomas K. Hockel, Mark Iezza, and Melis Atalay for Defendant and Appellant.

Shegerian & Associates, Carney R. Shegerian and Jill McDonell for Plaintiff and Respondent.

―――――――――――――――

# INTRODUCTION

In 2008 Maria Martinez filed this action against her former employer, Rite Aid Corporation, and her former supervisor, Kien Chau. In 2010 a jury returned a special verdict in Martinez's favor and awarded her $3.4 million in compensatory damages and $4.8 million in punitive damages. Following an appeal by Rite Aid and Chau, this court reversed the judgment and remanded the case for a new trial on compensatory damages on Martinez's causes of action for wrongful termination in violation of public policy against Rite Aid and intentional infliction of emotional distress against Rite Aid and Chau.

At the 2014 retrial, the jury awarded Martinez $321,000 on her wrongful termination cause of action against Rite Aid, $0 on her intentional infliction of emotional distress cause of action against Rite Aid, and $20,000 on her intentional infliction of emotional distress cause of action against Chau. Following an appeal by Martinez, this court reversed the judgment and remanded the case for another new trial on compensatory damages on Martinez's wrongful termination cause of action against Rite Aid and her intentional infliction of emotional distress causes of action against Rite Aid and Chau. Recognizing that the case would be tried for a third time, the court "offer[ed] . . . guidance to the trial court on retrial," including that the special verdict form ask the jury to apportion noneconomic damages for intentional infliction of emotional distress between Chau and other Rite Aid employees.

At the 2018 retrial, the jury awarded Martinez $2,012,258 on her wrongful termination cause of action against Rite Aid and $4 million on her intentional infliction of emotional distress causes of action against Rite Aid and Chau. Rite Aid argues the trial

2

court prejudicially erred by rejecting this court's direction that the special verdict form require the jury to apportion noneconomic damages for intentional infliction of emotional distress between Chau and other Rite Aid employees. Rite Aid contends the trial court also erroneously instructed the jury about the damages to be awarded for intentional infliction of emotional distress and about Martinez's post-termination earnings. Rite Aid further asserts the trial court should have reduced the past economic damages award for wrongful termination by the amount of Martinez's post-termination earnings.

Actual earnings from substitute employment must be offset from lost earnings awards. We accordingly agree with Rite Aid that Martinez's post-termination earnings should have been deducted from the past economic damages award for wrongful termination, and we modify the judgment accordingly. We affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

We assume familiarity with this court's two prior opinions. (*Martinez v. Rite Aid Corporation* (Apr. 23, 2013, B228621) [nonpub. opn.] (*Martinez I*); *Martinez v. Rite Aid Corporation* (Sept. 1, 2016, B263665) [nonpub. opn.] (*Martinez II*).) We thus provide a detailed description of the events relevant to this appeal and an overview of the other proceedings.

A.     *The First Trial and* Martinez I

Martinez filed suit against Rite Aid and Chau in November 2008. Martinez alleged causes of action for wrongful termination in violation of public policy based on disability, age, a medical leave of absence, and a sexual harassment complaint; intentional infliction of emotional distress; and invasion of privacy. After a

four-week trial in 2010, the jury returned a special verdict in Martinez's favor, and awarded her $3.4 million in compensatory damages and $4.8 million in punitive damages.

Rite Aid and Chau appealed. This court found that sufficient evidence supported the verdicts on Martinez's causes of action for wrongful termination in violation of public policy and intentional infliction of emotional distress, but not on the cause of action for invasion of privacy. We also found that the verdicts awarding compensatory damages were impermissibly ambiguous, and that the verdict awarding punitive damages was not supported by sufficient evidence to impose employer liability for punitive damages against Rite Aid. We reversed the judgment and remanded the matter for a new trial on compensatory damages as to the causes of action for wrongful termination in violation of public policy and intentional infliction of emotional distress.

B.    *The Second Trial and* Martinez II

After a multi-week trial in 2014, the jury returned a special verdict on Martinez's compensatory damages claims. On the cause of action for wrongful termination in violation of public policy against Rite Aid, the jury found that Rite Aid's wrongful termination in August 2007 was a substantial factor in causing Martinez harm, and awarded Martinez a total of $321,000 on that claim, consisting of $126,000 in past economic loss, $40,000 in future economic loss, $77,500 in past noneconomic loss, and $77,500 in future noneconomic loss. On the cause of action for intentional infliction of emotional distress against Rite Aid, the jury found that Rite Aid's intentional infliction of emotional distress toward Martinez between December 2006 and August 2007 was a substantial factor in causing her harm, but awarded

4

Martinez $0 in damages on that claim. On the cause of action for intentional infliction of emotional distress against Chau, the jury found that Chau's intentional infliction of emotional distress toward Martinez between December 2006 and February 2007 was a substantial factor in causing her harm, and awarded Martinez $20,000 in past noneconomic loss and $0 in future noneconomic loss.

Martinez appealed. This court found that the jury's findings on Martinez's noneconomic damages were fatally inconsistent. We concluded that the jury's award of $0 in noneconomic damages on the intentional infliction of emotional distress cause of action against Rite Aid was inconsistent with the special verdict in the 2010 trial that established Rite Aid's liability to Martinez for intentional infliction of emotional distress. We also concluded that the jury's award of $0 in noneconomic damages on the intentional infliction of emotional distress cause of action against Rite Aid was inconsistent with its award of $20,000 in noneconomic damages on the intentional infliction of emotional distress claim against Chau because the 2010 jury found that Chau was acting within the course and scope of his Rite Aid employment when he engaged in outrageous conduct toward Martinez between December 2006 and February 2007. We further concluded that "the discrepancy between the jury's special verdicts on the intentional infliction of emotional distress claims against Rite Aid and Chau was not supported by the evidence presented at the retrial," which showed that the emotional distress Martinez suffered in the nine months before her termination was not solely caused by Chau, but also by other Rite Aid employees acting within the course and scope of their Rite Aid employment. (*Martinez II*, *supra*, B263665.) Thus, "any award of non-economic damages based on Rite Aid's vicarious liability for intentional infliction of emotional distress should have

5

exceeded the jury's award of non-economic damages against Chau." (*Ibid.*)

This court reversed the judgment and remanded the case for a new trial on compensatory damages as to the causes of action for wrongful termination in violation of public policy against Rite Aid and intentional infliction of emotional distress against Rite Aid and Chau. Recognizing that the case would be tried for a third time on the issue of compensatory damages, "we offer[ed] the following guidance to the trial court on retrial":

> "First, the jury should be instructed on the specific liability findings that were made in the first trial, and the fact that it is bound by each of those prior findings. On the wrongful termination claim, the trial court should instruct the jury that it is bound by the findings that (1) Martinez had a known mental disability, took a medical leave of absence for a serious health condition, and made a complaint about sexual harassment; (2) Martinez's mental disability, medical leave of absence, and sexual harassment complaint were a motivating reason for Rite Aid's decision to discharge her; and (3) the discharge caused Martinez harm. On the intentional infliction of emotional distress claims, the trial court should instruct the jury that it is bound by the findings that (1) Rite Aid employees and managers, including, but not limited to Chau, engaged in outrageous conduct toward Martinez between December 2006 and August 2007; (2) those Rite Aid employees and managers who engaged in the outrageous conduct toward Martinez were acting within the course and scope of their employment; (3) Rite Aid intended to cause Martinez

6

emotional distress and/or acted with reckless disregard of the possibility that she would suffer emotional distress; (4) Martinez suffered severe emotional distress; and (5) the conduct of Rite Aid, its employees and Chau was a substantial factor in causing Martinez severe emotional distress. On the special verdict form, the jury should not be asked whether the termination or other tortious conduct was a substantial factor in causing Martinez harm because these liability questions were found to be true at the first trial and the jury is bound by those findings.

"In addition to giving the standard instructions on non-economic damages, the trial court should instruct the jury that any non-economic damages awarded on the wrongful termination in violation of public policy claim are to compensate Martinez for the harm caused by the termination of her employment in August 2007. The trial court should also instruct the jury that any non-economic damages awarded on the intentional infliction of emotional distress claims are to compensate Martinez for the harm caused by the outrageous conduct of Rite Aid employees, including Chau, that occurred between December 2006 and August 2007. To avoid the possibility of duplicative damages against Rite Aid on these claims, the jury should be instructed that any damages for the harm caused by Rite Aid's wrongful termination of Martinez should be awarded only once. To avoid the possibility of duplicative damages

7

between Rite Aid and Chau on the intentional infliction of emotional distress claims, the special verdict form should ask the jury what amount or percentage of non-economic damages were caused by Chau, and what amount or percentage of non-economic damages were caused by other Rite Aid employees during the relevant time period." (*Martinez II*, *supra*, B263665.)

C.    *The Third Trial*

1.    *The jury instructions*

The third trial commenced on March 13, 2018. The trial court instructed the jury in accordance with the *Martinez II* directions.

With respect to Martinez's intentional infliction of emotional distress causes of action, the trial court instructed the jury:

"A corporation is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment.

"On Maria Martinez's claim for intentional infliction of emotional distress, you are bound by the finding[s] that, one, Rite Aid employees and managers, including, but not limited to, Kien Chau, engaged in outrageous conduct toward Maria Martinez between December 2006 and August 2007.

"Two, those Rite Aid employees and managers who engaged in the outrageous conduct toward Maria Martinez were acting within the course and scope of their employment.

8

"Three, Rite Aid intended to cause Maria Martinez emotional distress . . . and/or acted with reckless disregard of the possibility that Maria Martinez would suffer emotional distress.

"Four, Maria Martinez suffered severe emotional distress.

"And five, the conduct of Rite Aid, its employees, and Kien Chau was a substantial factor in causing Maria Martinez severe emotional distress."

With respect to damages, the trial court instructed the jury with a modified version of CACI No. 3901 (introduction to tort damages—liability established).  The instruction included the following verbatim portion of CACI No. 3901:

"The amount of damages must include an award for each item of harm that was caused by Rite Aid Corporation's and Kien Chau's wrongful conduct, even if the particular harm could not have been anticipated."

In accordance with the *Martinez II* advice regarding the instructions on noneconomic damages, the trial court instructed the jury:

"Any noneconomic damages on the wrongful termination [in] violation of public policy claim are to compensate Maria Martinez for the harm caused by the termination of her employment in August 2007.

"Any noneconomic damages awarded on the intentional infliction of emotional distress claims are to compensate Maria Martinez for the harm caused by the outrageous

9

conduct of Rite Aid employees, including Kien Chau, that occurred between December 2006 and August 2007.

"Any damages awarded for harm caused by Rite Aid's wrongful termination of Maria Martinez should be awarded only once."

The trial court also instructed the jury with CACI No. 3928, the "unusually susceptible plaintiff" instruction:

"You must decide the full amount of money that will reasonably and fairly compensate Maria Martinez for all damages caused by the wrongful conduct of Rite Aid Corporation and Kien Chau, even if Maria Martinez was more susceptible to injury than a normally healthy person would have been, and even if a normally healthy person would not have suffered similar injury."

2. *The special verdict form*

In addition to the recommendations regarding jury instructions, this court also advised in *Martinez II* that "[t]o avoid the possibility of duplicative damages between Rite Aid and Chau on the intentional infliction of emotional distress claims, the special verdict form should ask the jury what amount or percentage of non-economic damages were caused by Chau, and what amount or percentage of non-economic damages were caused by other Rite Aid employees during the relevant time period." The trial court ultimately ruled that, despite this court's advice, the special verdict form would not include a question asking the jury to apportion noneconomic damages for intentional infliction of emotional distress between Chau and other Rite Aid employees.

10

The final special verdict form contained two questions. The first question, under the heading "wrongful termination [in] violation of public policy[] cause of action," asked the jury:

"Question Number 1: Please state the total amount of damages to be awarded to Maria Martinez against Rite Aid Corporation on her wrongful termination in violation of public policy cause of action."

Four separate lines, one each for past economic loss, future economic loss, past noneconomic loss, and future noneconomic loss, followed this question.

The second question, under the heading "intentional infliction of emotional distress cause of action," stated:

"Question Number 2: Please state the total amount of damages to be awarded to Maria Martinez against Rite Aid Corporation, and Kien Chau, on her intentional infliction of emotional distress cause of action for harm caused by outrageous conduct occurring between December of 2006 and August of 2007. (Note: Do not award any damages here that you already awarded in response to Question Number 1 under wrongful termination cause of action. This award is only for damages caused by Rite Aid Corporation's and Kien Chau's intentional infliction of emotional distress misconduct.)."

Two separate lines, one for past noneconomic loss and one for future noneconomic loss, followed this question.

3.     *The jury verdict*

The jury returned its verdict on March 27, 2018. The jury awarded Martinez $2,012,258 on her wrongful termination claim against Rite Aid, consisting of $464,258 in past economic loss,

11

$574,000 in future economic loss, $374,000 in past noneconomic loss, and $600,000 in future noneconomic loss. The jury awarded Martinez $4 million in past noneconomic damages on her intentional infliction of emotional distress causes of action against Rite Aid and Chau. The jury did not award Martinez any future noneconomic damages on her intentional infliction of emotional distress causes of action.

The trial court entered judgment on the jury verdict on June 27, 2018, and denied Rite Aid's new trial motion on August 27, 2018. Rite Aid filed a timely appeal from the judgment and the order denying the new trial motion.[1]

## DISCUSSION

A. *Standards of Review*

Whether the trial court correctly interpreted our prior opinion is an issue of law reviewed de novo. (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859 (*Ayyad*); see *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 674 ["The interpretation of the language of a judicial opinion is a legal determination, and it is therefore subject to de novo review."].)

"'The propriety of jury instructions is a question of law that we review de novo. [Citations.]' Similarly, a special verdict's correctness is analyzed as a matter of law and therefore subject to de novo review." (*Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1187; see *Bermudez v. Ciolek* (2015) 237

---

[1] The trial court dismissed Chau without prejudice posttrial pursuant to Code of Civil Procedure sections 581, subdivision (m), and 583.150. Rite Aid does not appeal that order, and we do not address it.

12

Cal.App.4th 1311, 1316 [appellate courts ""review a special verdict de novo to determine whether its findings are inconsistent""].)

"'Whether a plaintiff "is entitled to a particular measure of damages is a question of law subject to de novo review."'" (*Bermudez v. Ciolek, supra,* 237 Cal.App.4th at p. 1324; accord, *Williams v. The Pep Boys Manny Moe & Jack of California* (2018) 27 Cal.App.5th 225, 236.)

B.    *The Award of Past Noneconomic Damages for Intentional Infliction of Emotional Distress*

1.    *The trial court's rejection of the* Martinez II *guidance does not require reversal of the judgment*

The trial court did not implement this court's direction that the special verdict form ask the jury to state separately the amount or percentage of noneconomic damages attributable to Chau's intentional infliction of emotional distress and the amount or percentage attributable to the conduct of other Rite Aid employees.  Rite Aid argues that the trial court's rejection of the *Martinez II* advice requires reversal of the judgment.

"Our remittitur directions are contained in the dispositional language of our previous opinion.  [Citation.]  The trial court's interpretation of those directions is not binding on us.  [Citation.] We look to the wording of our directions to determine whether the trial court's order comports with them.  [Citation.]  When, as in this case, the reviewing court remands the matter for further proceedings, its directions must be read in conjunction with the opinion as a whole."  (*Ayyad, supra,* 210 Cal.App.4th at p. 859.)

"When an appellate court's reversal is accompanied by directions requiring specific proceedings on remand, those directions are binding on the trial court and must be followed. Any material variance from the directions is unauthorized and

void." (*Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982, italics omitted; see *In re Candace P.* (1994) 24 Cal.App.4th 1128, 1131 ["The correct analysis, we believe, is the determination whether an apparent variance in the trial court's execution of the appellate ruling is 'material.'"].)

The dispositional language of *Martinez II* directed the trial court to hold a new trial on compensatory damages on Martinez's causes of action for wrongful termination in violation of public policy and intentional infliction of emotional distress. The trial court did so. In that regard, the trial court complied with the *Martinez II* remittitur directions. (See *Ayyad, supra,* 210 Cal.App.4th at p. 859.)

This court also provided specific advice to the trial court about the special verdict form in an effort to avoid in the third trial the types of errors that had permeated the first and second trials. The trial court rejected that advice. Its decision to do so, while perplexing, does not require reversal of the judgment because it did not prejudice Rite Aid. As discussed below, neither the jury instructions nor the special verdict form instructed the jury to award duplicative damages, and the damages awards do not support a conclusion that the jury did so.

2.    *The trial court did not instruct the jury to award duplicative damages*

Rite Aid contends the jury instructions and the special verdict form directed the jury to award duplicative noneconomic damages for intentional infliction of emotional distress. Rite Aid forfeited its objections to most of the jury instructions it challenges. In any event, neither the jury instructions nor the special verdict form contains any direction to award duplicative damages.

14

Rite Aid proposed two of the jury instructions it challenges, and proposed the language it criticizes in two other instructions.[2] Rite Aid cannot contest on appeal the same jury instructions it requested.[3] (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130-1131 (*Metcalf*); see *Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 592-593; *Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653.)

Even if Rite Aid had not forfeited its objections, Rite Aid's arguments lack merit. Rite Aid argues that the trial court's vicarious liability and intentional infliction of emotional distress instructions together instructed the jury to include in any damages award against Rite Aid damages attributable to Chau's conduct. The vicarious liability instruction (CACI No. 3700) states that "[a] corporation is responsible for harm caused by the

---

[2] Rite Aid proposed CACI No. 3928 (unusually susceptible plaintiff) and the modified version of CACI No. 1600 (intentional infliction of emotional distress—essential factual elements) with which the trial court instructed the jury. In addition, the versions of CACI No. 3700 (introduction to vicarious responsibility) and CACI No. 3901 (introduction to tort damages—liability established) that Rite Aid proposed contain the language to which Rite Aid now objects.

[3] Rite Aid argues that pursuant to Code of Civil Procedure section 647 objections to jury instructions cannot be forfeited. Section 647 states that "giving an instruction, refusing to give an instruction, or modifying an instruction requested" are "deemed excepted to" without an express objection. (Code Civ. Proc., § 647.) Section 647 means only that "an appellant is deemed to have excepted to the instructions he has not requested or agreed to." (*Pugh v. See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 759.) Rite Aid "requested or agreed to" many of the instructions it challenges on appeal.

15

wrongful conduct of its employees while acting within the scope of their employment." The intentional infliction of emotional distress instruction (CACI No. 1600) sets forth the elements of the cause of action, modified in accordance with our *Martinez II* guidance about the prior jury's findings and their binding effect.

Relying on these instructions, Rite Aid claims that because the trial court instructed the jury to include damages for Chau's conduct in any damages award against Rite Aid, the court's instructions that any damages awarded for intentional infliction of emotional distress should compensate Martinez for harm caused by both defendants' wrongful conduct impermissibly instructed the jury to add a duplicative damages award for Chau's conduct. The jury instructions Rite Aid identifies do not support Rite Aid's claim.

The tort damages instruction (CACI No. 3901) states that any damages awarded "must include an award for each item of harm that was caused by Rite Aid Corporation's and Kien Chau's wrongful conduct, even if the particular harm could not have been anticipated." The "unusually susceptible plaintiff" instruction (CACI No. 3928) states that the jury "must decide the full amount of money that will reasonably and fairly compensate Maria Martinez for all damages caused by the wrongful conduct of Rite Aid Corporation and Kien Chau, even if Maria Martinez was more susceptible to injury than a normally healthy person would have been, and even if a normally healthy person would not have suffered similar injury." These general damages instructions direct the jury that any damages awarded must compensate Martinez for "each item of harm" and "all damages" caused by Rite Aid's and Chau's wrongful conduct. These instructions do not state that the jury should award duplicative damages for intentional infliction of emotional distress. At most these

16

instructions are nonspecific about how the jury should assess damages for Chau's wrongful conduct.

Even if the above instructions are vague about damages awarded for harm caused by Chau, the special instruction on noneconomic damages for intentional infliction of emotional distress is not. In accordance with the *Martinez II* advice, the trial court instructed the jury that any noneconomic damages awarded on the intentional infliction of emotional distress claims "are to compensate Maria Martinez for the harm caused by the outrageous conduct of Rite Aid employees, including Kien Chau, that occurred between December 2006 and August 2007." This special instruction, tailored to the intentional infliction of emotional distress causes of action in this case, plainly states that any noneconomic damages awarded for intentional infliction of emotional distress encompass wrongful conduct by all Rite Aid employees, including Chau.[4]

Thus, when the jury confronted the question on the special verdict form asking it to "state the total amount of damages to be awarded to Maria Martinez against Rite Corporation, and Kien Chau, on her intentional infliction of emotional distress cause of action for harm, caused by outrageous conduct occurring between December of 2006 and August of 2007," the jury had been

---

[4] Rite Aid complains that the trial court did not instruct the jury not to duplicate damages for intentional infliction of emotional distress between Rite Aid and Chau. Nothing in the record indicates Rite Aid requested such an instruction. Rite Aid cannot claim error in the failure to give a jury instruction it did not request. (*Metcalf*, *supra*, 42 Cal.4th at p. 1131 ["Plaintiff's failure to request any different instructions means he may not argue on appeal the trial court should have instructed differently."].)

17

instructed that any noneconomic damages awarded for intentional infliction of emotional distress would compensate Martinez for the wrongful conduct of all Rite Aid employees, including Chau, during that time period. "[W]e presume the jury follows its instructions [citations] 'and that its verdict reflects the legal limitations those instructions imposed.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803-804.) None of the other instructions Rite Aid cites nor the special verdict form is inconsistent with the specific special instruction the jury received about noneconomic damages for intentional infliction of emotional distress.[5]

Furthermore, the damages awards do not support a conclusion that the jury misunderstood the damages being sought or did not apprehend how to assess damages properly. The jury awarded separate specific amounts for each category of damages on the wrongful termination cause of action. The jury awarded a different specific amount for past noneconomic loss caused by Rite Aid's and Chau's intentional infliction of emotional distress, and nothing for future noneconomic loss on the intentional infliction of emotional distress cause of action. These damages awards reflect a jury that understood the different types and categories of damages available, and made intentional decisions with respect to each type and category. Indeed, the jury appears to have agreed with Rite Aid's suggestion in its closing argument that the

---

[5] Rite Aid argues that had the special verdict form required the jury to allocate noneconomic damages for intentional infliction of emotional distress between Rite Aid and Chau, "the damages allocated to Chau could have been deducted from the total award." Rite Aid does not explain the purpose of or legal basis for any such deduction in light of Rite Aid's admission of responsibility pursuant to respondeat superior for any damages assessed against Chau.

damages for "future noneconomic loss . . . should be zero." The trial court's decision to exclude from the special verdict form a question apportioning noneconomic damages for intentional infliction of emotional distress between Rite Aid and Chau does not warrant reversal of the noneconomic damages award for intentional infliction of emotional distress.[6]

C.      *The Award of Past Economic Damages for Wrongful Termination*

The parties agree that Martinez earned $140,840 from post-termination employment. Martinez contends she earned these wages from jobs inferior and not substantially similar to her position at Rite Aid. The parties disagree about whether these earnings must be deducted from Martinez's award of past economic damages for wrongful termination. We agree with Rite Aid that Martinez's actual post-termination earnings must be deducted from the past economic damages award for wrongful termination.

The trial court rejected Rite Aid's request for CACI No. 3961 (duty to mitigate damages for past lost earnings). CACI No. 3961 directs the jury to "subtract the amount [the plaintiff] earned . . . by returning to gainful employment" from any award of past economic damages.

The trial court instead instructed the jury with CACI No. 2407 (affirmative defense—employee's duty to mitigate

---

[6]      Because we find no error in the damages award for intentional infliction of emotional distress, we need not address Rite Aid's claim that reversal of that award requires reversal of the noneconomic damages award for wrongful termination in violation of public policy.

19

damages).[7]  This instruction applies where an employer contends a plaintiff's damages for lost earnings should be reduced by the amount the plaintiff "could have earned from other employment." (CACI No. 3963; see CACI No. 3963 (Directions for Use) [instruction "may be given for any claim in which the plaintiff seeks to recover damages for past and future lost earnings from an employer for a wrongful termination of employment . . . when there is evidence that the employee's damages could have been mitigated"].)

"The general rule is that the measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, less the amount which the employer affirmatively proves the employee has earned or with reasonable effort might have earned from other employment."  (*Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 (*Parker*).)  The burden to prove failure to mitigate damages lies squarely with the employer.  (*Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 409 (*Candari*).)

In *Parker*, the Supreme Court held that summary judgment was properly granted to an actor in a breach of contract suit seeking to recover the full amount of agreed compensation for "the lead [role] in a song-and-dance production," despite the actor's rejection of the defendant's substitute offer of the "lead . . . in a western style motion picture." (*Parker*, *supra*, 3 Cal.3d at p. 183.) The Supreme Court explained that "before projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was comparable, or

---

[7]     CACI No. 2407 has been renumbered CACI No. 3963.  All further references cite the latter number.

20

substantially similar, to that of which the employee has been deprived; the employee's rejection of or failure to seek other available employment of a different or inferior kind may not be resorted to in order to mitigate damages." (*Id.* at p. 182.) The court concluded that the plaintiff's failure to accept the defendant's substitute employment offer "could not be applied in mitigation of damages because the offer . . . was of employment both different and inferior." (*Id.* at p. 183.)

Citing *Villacorta v. Cemex Cement, Inc.* (2013) 221 Cal.App.4th 1425 (*Villacorta*), Martinez contends that her post-termination earnings should not be deducted from the award of past economic damages for wrongful termination. *Villacorta* extended *Parker*'s holding to actual income earned from substitute employment by a discharged employee. The discharged plaintiff in *Villacorta* accepted substitute employment at a higher salary, but the new position required the plaintiff to rent a room and live away from his family during the week. The jury awarded the plaintiff lost wages from the date of his termination through trial; the jury did not deduct the wages the plaintiff had earned from the new position. On appeal the defendant argued that wages actually earned from a new position, even an inferior one, must be applied to mitigate wrongful termination damages.

Relying on *Parker*, *supra*, 3 Cal.3d at pages 181 to 182 and *Rabago-Alvarez v. Dart Industries, Inc.* (1976) 55 Cal.App.3d 91 (*Rabago-Alvarez*), the court held that "[w]ages actually earned from an inferior job may not be used to mitigate damages because if they were used then it would result 'in senselessly penalizing an employee who, either because of an honest desire to work or a lack of financial resources, is willing to take whatever employment he can find.'" (*Villacorta*, *supra*, 221 Cal.App.4th at p. 1432.) The court found that the jury could reasonably have concluded that the

plaintiff's substitute job was inferior to his prior job, and that the wages the plaintiff earned at the substitute job should not be applied to mitigate the employer's damages. (*Ibid.*)

We respectfully disagree with *Villacorta*. Neither *Parker* nor *Rabago-Alvarez* supports *Villacorta*'s holding that earned wages from an inferior job do not mitigate economic damages for wrongful termination. *Parker* and *Rabago-Alvarez* address projected income, and an employer's burden to prove that an employee *could* have earned income from other employment. When an employer seeks to reduce a discharged employee's damages by amounts the employer contends the employee could have earned from other employment, the employer must prove, among other things, that employment substantially similar to the employee's former position was available to the employee.

Thus, in *Parker*, the Supreme Court held that the plaintiff's refusal to accept the defendant's alternative offer of a role in a "western style motion picture" could not be applied to mitigate the plaintiff's damages because the substitute employment was not substantially similar to the former role in a "song-and-dance production." (*Parker*, *supra*, 3 Cal.3d at p. 183.) In *Rabago-Alvarez*, the plaintiff conceded her actual earnings from inferior work must be deducted from the lost earnings award, but argued that by accepting such employment she did not waive her right to decline other inferior employment opportunities. (*Rabago-Alvarez*, *supra*, 55 Cal.App.3d at pp. 97-99.) The court held that "the trial court should not have deducted from plaintiff's recovery . . . the amount that the court found she *might have earned* in employment which was substantially inferior to her position with defendant." (*Id.* at p. 99, italics added.) Neither *Parker* nor *Rabago-Alvarez* suggests that amounts a plaintiff has actually earned from

22

substitute employment, even inferior employment, are not applied to mitigate damages for lost earnings.[8]

A wrongfully discharged employee's "'actual damage is the amount of money he [or she] was out of pocket by reason of the wrongful discharge.'" (*Stanchfield v. Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1502-1503, italics omitted.) But "both public and private employees faced with a wrongful discharge have a legal duty to mitigate damages while pursuing remedies against their former employer." (*Candari*, *supra*, 193 Cal.App.4th at p. 409.)

Consistent with these principles, actual earnings from substitute employment are offset from lost earnings awards. (*Parker*, *supra*, 3 Cal.3d at p. 181 ["[t]he general rule is that the measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, *less the amount which the employer affirmatively proves the employee has earned* or with reasonable effort might have earned from other employment," italics added]; accord, *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1701 [back pay awards "'are designed to make the employee whole,'" and awarding full amount without offset for earnings from other employment "would make

---

[8]     *Villacorta* also cites *Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 871 as support for the proposition that "if the new job is different or inferior, then the wages from that job may not be used to mitigate damages." (*Villacorta*, *supra*, 221 Cal.App.4th at p. 1432.) *Mize-Kurzman* held that the trial court erred in admitting evidence of the plaintiff's projected retirement benefits to prove mitigation of damages. (*Mize-Kurzman*, at pp. 871-878.) *Mize-Kurzman* does not support a conclusion that actual post-termination earnings should not be deducted from lost earnings awards.

23

[the employee] more than whole"]; *Bevli v. Brisco* (1989) 211 Cal.App.3d 986, 994 ["[t]he obligation to reimburse a wrongfully discharged employee may be mitigated by deducting compensation or benefits actually received by the employee that are inconsistent with the original employment"]; see also *Currieri v. Roseville* (1970) 4 Cal.App.3d 997, 1003 [former employees conceded that "from any back payments due there must be deducted [their] earnings from other sources"]; *Wiles v. State Personnel Board* (1942) 19 Cal.2d 344, 352 [ordering petitioner's reinstatement with back pay, less "any remuneration received" from "other employment, if any, petitioner . . . engaged in" between termination and reinstatement].) The similarity or dissimilarity of the substitute employment to the prior position has no bearing on whether actual earnings, as opposed to projected earnings, are deducted from a lost earnings award. (See *Parker*, *supra*, 3 Cal.3d at p. 182 ["before *projected earnings* from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was comparable, or substantially similar, to [the prior employment]," italics added].) Although an employee may not be obliged to accept inferior employment, if an employee accepts employment and receives earnings, those actual earnings should be deducted from an award of past lost earnings.[9]

The jury awarded Martinez $464,258 in past economic damages for wrongful termination. The parties agree that award includes $140,840 Martinez earned from post-Rite Aid employment. Martinez's actual post-termination earnings should

---

[9] We express no opinion regarding whether an employee may recover noneconomic damages for harm suffered as a result of accepting inferior employment following a wrongful termination.

have been deducted from the past economic damages award for wrongful termination. The judgment will be modified to reduce the award of past economic damages for wrongful termination by $140,840.[10]

## DISPOSITION

The judgment is modified to reduce the award of past economic damages to Martinez for wrongful termination by $140,840 to $323,418. In all other respects, the judgment is affirmed. Martinez shall recover her costs on appeal.


McCORMICK, J.[*]


We concur:


PERLUSS, P. J.


SEGAL, J.

---

[10]     The parties agree that if we conclude the judgment should be modified to reduce the award of past economic damages for wrongful termination, we should do so by remittitur.

[*]     Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.